## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CORECIVIC, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **CITY OF LEAVENWORTH, KANSAS,** | ) | **Case No. 2:25-cv-2457** |
| **MAYOR HOLLY PITTMAN, MAYOR PRO** | ) | |
| **TEM NANCY BAUDER, COMMISSIONERS** | ) | |
| **GRIFF MARTIN, JERMAINE WILSON AND** | ) | |
| **EDD HINGULA, IN THEIR OFFICIAL** | ) | |
| **CAPACITIES AS MEMBERS OF THE** | ) | |
| **LEAVENWORTH CITY COMMISSION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff CoreCivic, Inc. ("CoreCivic" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendants the City of Leavenworth, Kansas (the "City" or the "City of Leavenworth"); Mayor Holly Pittman; Mayor Pro Tem Nancy Bauder; and Commissioners Griff Martin, Jermaine Wilson, and Edd Hingula, in their official capacities and as members of the Leavenworth City Commission (collectively with the City, "Defendants").

## INTRODUCTION

1.      This is a civil rights action brought under 42 U.S.C. § 1983 to enjoin and remedy ongoing violations of the Supremacy Clause of the United States Constitution and other federal rights.

2.      Plaintiff CoreCivic is a private company that has reached an agreement with the Federal Government to manage and operate the Midwest Regional Reception Center, a detention facility located at 100 Highway Terrace in Leavenworth, Kansas (the "Property"). The City of Leavenworth, through its City Commission, is unlawfully requiring Plaintiff to obtain a local

1

Special Use Permit (a "SUP") before it may carry out its obligations to the Federal Government. This constitutes an unconstitutional interference with the operations of the Federal Government and a violation of rights secured by federal law.

3.      On March 25, 2025, the City of Leavenworth adopted Resolution No. B-2394 entitled "A Resolution of the City Commission of the City of Leavenworth, Kansas, Regarding Certain Jail and Prison Uses on Property Located at 100 Highway Terrace, Leavenworth, Kansas." ("Resolution No. B-2394" or the "Resolution"). A true and correct copy of the Resolution is attached hereto as Exhibit A.

4.      Adopted by a 5-0 vote by City Commission members Mayor Holly Pittman, Mayor Pro Tem Nancy Bauder, and Commissioners Griff Martin, Jermaine Wilson and Edd Hingula, Resolution No. B-2394 prohibits CoreCivic from using the Property as a federal detention center under the guise that a SUP is now required, even though the City acknowledged for more than a decade that CoreCivic was exempt from a SUP based on its historic and existing use of the Property, and the City allowed its operation as a detention center during that time without a SUP.

5.      Resolution No. B-2394 substantially interferes with and obstructs the Congressionally funded and approved enforcement of federal immigration law by U.S. Immigration and Customs Enforcement ("ICE"). In particular, Resolution No. B-2394 prohibits performance of the agreement that ICE entered into with CoreCivic in March 2025 (the "ICE Agreement"), pursuant to which CoreCivic is to operate and manage the Property – as it has done since 1992 with other partners, including the United States Marshals Service.

6.      The Federal Government has express statutory power to detain individuals in connection with federal immigration proceedings (8 U.S.C. § 1231(g)(1)), and to make arrangements with third parties to house federal detainees in private facilities (8 U.S.C. §

1231(g)(1)).

7.      Yet, because of Resolution No. B-2394, the City now contends it is illegal for the Federal Government or CoreCivic to perform under their agreement to use the Property as an immigration detention facility.

8.      Any state law that interferes with or is contrary to the laws of Congress is invalid pursuant to Article VI, ¶2 of the United States Constitution (the "Supremacy Clause"). The immunity of the Federal Government from state, local or city regulation is a fundamental principle of the Constitution.

9.      The ICE Agreement provides for CoreCivic to house federal immigration detainees at the Property. CoreCivic would perform the ICE Agreement but for Resolution No. B-2394.

10.      Because it prevents ICE from performing the ICE Agreement with CoreCivic, Resolution No. B-2394 directly regulates the authority of the Federal Government in its exercise of sovereign powers within the supreme sphere of federal action. Because the City has applied Resolution No. B-2394 to CoreCivic's operations at the Property to directly target CoreCivic's role as a federal contractor, that application constitutes impermissible discrimination against the Federal Government and CoreCivic as its contractor.  As applied to CoreCivic's operations at the Property under the ICE Agreement, Resolution No. B-2394 substantially interferes with and obstructs the operation of federal immigration law.

11.      This Court should therefore declare that Resolution No. B-2394 is unconstitutional as contrary to the principles of intergovernmental immunity and preemption, and enter a permanent injunction 1) restraining the City from enforcing the Resolution against CoreCivic, and 2) permitting CoreCivic to perform under its agreement with ICE to use the Property as an immigration detention facility.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction under 28 U.S.C. § 1343(a)(3) because the action arises under 42 U.S.C. § 1983.

13.     This Court also has jurisdiction under 28 U.S.C. § 1331 because the question of whether Resolution No. B-2394 violates the United States Constitution is a federal question.

14.     This Court also has jurisdiction under 28 U.S.C. § 1332 because a) CoreCivic and Defendants are citizens of different states, and b) the monetary value of the benefit that would flow to CoreCivic if the injunction were granted exceeds $75,000, exclusive of interest and costs.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred, and the Property that is the subject of this action is situated in this District and the effects of Resolution No. B-2394 are being and will continue to be felt in this District.

## THE PARTIES

16.     Plaintiff CoreCivic is a Maryland corporation with its principal place of business in Brentwood, Tennessee. CoreCivic operates private correctional and detention facilities throughout the United States.

17.     Defendant City of Leavenworth, Kansas, is a city in the State of Kansas, Leavenworth County.

18.     Defendants Mayor Holly Pittman, Mayor Pro Tem Nancy Bauder, Griff Martin, Jermaine Wilson and Edd Hingula are members of the City Commission and, upon information and belief, citizens, residents and domiciliaries of the State of Kansas.

4

## FACTUAL BACKGROUND

A. **CoreCivic's Use of the Property in Leavenworth, Kansas, and the City's Development Regulations**

19.     CoreCivic is a private corporation that operates prisons and jails across the United States.

20.     Since 1992, CoreCivic has owned and operated a detention facility, located at 100 Highway Terrace in Leavenworth, Kansas, including under a contract with the United States Department of Justice's U.S. Marshals Service for substantially all of that time.   From its inception, the Property has been used as a jail or prison, as those terms are defined under the City of Leavenworth's Development Regulations.  The relevant sections of the City's Development Regulations cited in this complaint are attached hereto as Exhibit B ("Dev. Regs.").[1]

21.     In 2012, the City of Leavenworth enacted Ordinance No. 7911, which amended the Development Regulations, prohibiting the operation of a jail or prison without a SUP issued by the City.  A true and correct copy of Ordinance No. 7911 is attached hereto as Exhibit C; s*ee also* Dev. Regs., Exhibit B, Sec. 2.04.A.

22.     With the enactment of Ordinance No. 7911, a party whose property was subject to a SUP was required to submit an application and supporting documentation to the City Commission before using the property for a particular purpose.  Dev. Regs., Exhibit B, Sec. 2.04.B.  The application would then be subject to a series of procedures: among others, a notice of the application would be made to the public (Sec. 2.04.B.3); a public hearing before the Planning Commission would be held (Sec. 2.04.B.2 & 4); the Planning Commission would issue

---

[1] A complete copy of the City of Leavenworth's Development Regulations is available at the following link: https://www.leavenworthks.gov/sites/default/files/fileattachments/planning_amp_community_development/page/4941/2024_complete_development_regulations.pdf.

recommendations on the application (Sec. 2.04.B.5); the public could submit protest petitions relating to the application (Sec. 2.04.B.6); and the City Commission would ultimately decide whether to issue the SUP (Sec. 2.04.B.6), namely a "signed document from a designated community official authorizing development" (Art. 12) (defining "Permit").

23.     The Development Regulations also set rules for the continuation and rescission of a SUP. Section 2.04.C of the Regulations explained that

> A [SUP] may be granted by and continued annually by the City Commission, City of Leavenworth, Kansas. The continuation of a [SUP] exists within the property as long as such [SUP] is used in accordance with its original intended and approved purpose and the annual SUP fee is paid. Any discontinuance of more than 12 months, violation of permit conditions, or failure to pay a fee may enable the City Commission to administratively rescind a [SUP].

24.     Having operated its Property at 100 Highway Terrace as a jail since 1992, CoreCivic was not subject to the Development Regulations' provisions regarding SUPs. CoreCivic was expressly *exempt* from the SUP requirement as its use of the Property was grandfathered under Section 1.05.E.2 of the Development Regulations, which deemed the Property both an "existing special use" and a "lawful conforming use":

> Status of existing uses designated as special uses. Any existing legal use at the effective date [November 13, 2012] of these Development Regulations which is designated as a special use by these Development Regulations shall be deemed as **[1] an existing special use and [2] a lawful conforming use**.

> Dev. Regs., Exhibit B, Sec. 1.05.E.2 (emphasis and brackets added).

25.     Given its exempt status, CoreCivic has never had, and was never required to have, a SUP, nor has it been required to pay the annual fee associated with a SUP.

26.     On January 26, 2021, President Biden issued Executive Order 14006, titled "Reforming Our Incarceration System to Eliminate the Use of Privately Operated Criminal Detention Facilities," directing that the Department of Justice not renew contracts with privately

6

operated criminal detention facilities.

27.    In late 2021, CoreCivic's contract with the U.S. Marshals Service ended and CoreCivic ceased housing detainees at the Property shortly thereafter.  Nonetheless, CoreCivic continued to maintain the Property so as to ensure it could remain in use as a detention center. Among other things, CoreCivic maintained staff at the Property, employed individuals at the Property, marketed the Property, responded to requests for proposals for the Property, and engaged in contract negotiations for detention services at the Property with potential partners, including with ICE.

**B. U.S. Immigration and Customs Enforcement's Legal Mandate to Manage Immigration Detention**

28.    ICE manages and oversees the Nation's civil immigration detention system.

29.    Congress reassigned the border-enforcement functions formerly assigned to the Immigration and Naturalization Service to ICE, part of the U.S. Department of Homeland Security, in November 2002.  ICE began operations in March 2003 as The Bureau of Immigration and Customs Enforcement and was renamed U.S. Immigration and Customs Enforcement in March 2007.

30.    Congress has authorized or required the detention of aliens under several different statutes and conditions. *See*, *e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), 1226(a), 1226(c).

31.    Congress has also directed that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1),[2] and instructed that ICE "shall consider the availability for purchase or

---

[2] The authority granted to the Attorney General by §1231(g) and related provisions now resides in the Secretary of Homeland Security and divisions of his Department, including ICE.

lease of any existing prison, jail, detention center, or other comparable facility for [detention]" "[prior] to initiating any project for the construction of any new detention facility," *id.* § 1231(g)(2). Thus, Section 1231(g)(2) authorizes ICE to use private contractors to arrange for detention.

32.    The Secretary also has "authority to make contracts . . . as may be necessary and proper to carry out the Secretary's responsibilities." 6 U.S.C. § 112(b)(2). And pursuant to federal regulations, the Secretary may "delegate broad authority to manage the agency's contracting functions to heads of such contracting activities." 48 C.F.R. § 1.601(a). ICE officials "may enter into contracts of up to fifteen years' duration for detention or incarceration space or facilities, including related services." 48 C.F.R. § 3017.204-90.

### C. ICE's Agreement with CoreCivic to House Detainees at the Property

33.    On January 20, 2025, President Trump signed Executive Order 14159, titled "Protecting the American People Against Invasion," reversing Executive Order 14006 and allowing the Federal Government to contract with private companies for the operation of detention facilities.

34.    In early March 2025, CoreCivic entered into the ICE Agreement, confirming a relationship at the Property valued by CoreCivic at over $50 million annually for a period of five years, to provide urgent and essential detention services to ICE for individuals in federal immigration custody and to house more than 1,000 detainees pending the outcome of immigration proceedings.

35.    The ICE Agreement is essential as the Property plays a critical role in supporting the operational and logistical needs of ICE in the region. Strategically positioned in the central United States, the Property serves as a vital hub for the short-term and transitional housing of

detainees who are subject to removal proceedings or awaiting deportation. Additionally, its proximity to major transportation corridors and ICE field offices allows for efficient detainee processing, court appearances, and transfer operations. The Property is also essential to relieve pressure on other overcrowded detention centers, ensuring compliance with federal detention standards and supporting ICE's mandate to enforce the nation's immigration laws effectively. Interruptions to the availability or operation of the Property significantly disrupt ICE's regional enforcement capabilities and strain its national detention network.

### D. Defendants Adopt Resolution No. B-2394 Thwarting ICE's Use of the Property

36. In response to CoreCivic's announcement that it had agreed with ICE to house detainees at the Property, the City adopted Resolution No. B-2394 on March 25, 2025.

37. The City Commission proclaimed in the Resolution – incorrectly – that the use of the Property by CoreCivic "as a jail or prison was discontinued and abandoned on or about January 1, 2022, and has not been reestablished as of the date of this resolution, such that the use was discontinued or abandoned for a period exceeding twelve (12) months." Resolution, Exhibit A, Sec. 2. According to the City Commission, this purported discontinuance or abandonment of use authorized it – "pursuant to Sec. 2.04.C of the Development Regulations" (addressing SUP discontinuances or violations) – to "administratively rescind[] any and all special use permits or special use designations for … the Property as a jail and/or prison" *Id.*, Sec. 4.[3] However, as stated above, the Property never had or required a SUP and was not subject to the requirements of Sec.

---

[3] The Resolution also erroneously determined that the Property could no longer operate as a jail or prison because its use was no longer "a lawful **nonconforming** use" under Section 1.05.D.8 of the Development Regulations, *id.* at Sec. 2 and 3 (emphasis added), and, as such, the Property now needed a SUP to operate. *Id.* at Sec. 3. However, the Property was never deemed a "nonconforming use." In fact, when its use was grandfathered in 2012, it was designated as a "lawful **conforming** use," Dev. Reg., Exhibit B, Sec. 1.05.E.2 (emphasis added), and nothing in the Development Regulations provides for the revocation of such a designation.

2.04.C of the Development Regulations.

**E.  <u>The City Initiates Litigation in Federal and State Court</u>**

38.     On March 31, 2025, the City filed a lawsuit in the United States District Court for the District of Kansas based solely on the Declaratory Judgment Act, seeking declaratory and injunctive relief to prevent CoreCivic from operating the Property without a SUP.  *City of Leavenworth, Kansas v. CoreCivic, Inc.*, No. 25-cv-02169-TC-BGS.   On May 22, 2025, the Honorable Toby Crouse, U.S.D.J., dismissed the City's complaint for lack of subject matter jurisdiction because the City had failed "to allege that the sum or value of the dispute exceeds $75,000 as required to establish diversity jurisdiction under Section 1332."  *See* Memorandum and Order, Dkt No. 37, at 5.   The Court also noted that "[o]ne may (and CoreCivic does) reasonably argue that the City's claim must be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because it fails to assert any valid cause of action."  *Id.* (citations omitted.)

39.     On May 23, 2025, the City filed a petition in the District Court of Leavenworth County, Kansas.  *City of Leavenworth, Kansas v. CoreCivic, Inc., et al.*, Case No. LV-2025-CV-000180 (Bryant, John J.)   And on June 2, 2025, it filed an amended petition. As described in the amended petition, the issue presented in that case is "whether CoreCivic may use its property for a jail or prison within the City without first obtaining from the City a special use permit, as required by the City's Development Regulations."  *See* Amended Petition (Dkt. No. 13), ¶ 2.  The City's amended petition asks the state court to determine that the City Commission correctly found that CoreCivic had "abandoned" the Property in early 2022, and that the City Commission applied municipal law correctly when requiring, in accordance with the Development Regulations, that CoreCivic obtain a SUP before operating the Property as a jail or prison.  The City thus seeks a declaration and injunction under Kansas state law (Kan. Stat. Ann. §§ 60-1701 and 12-761) that

prevents CoreCivic from housing detainees at the Property without first obtaining a SUP.  *See* Amended Petition at 20 (Count I), 21 (Count II).

40.    The City's amended petition also contains a public nuisance count against CoreCivic pursuant to Kan. Stat. Ann. §§ 60-908, 12-761(b), and Ordinance 8113 of the City of Leavenworth, alleging that the operation of "a jail or prison without a special use permit will interfere with the interests of the community and the comfort and convenience of the general public," and "will annoy a substantial portion of the community." *Id.* at 24, ¶¶ 84-85.[4]

41.    On June 11, 2025, the District Court of Leavenworth County issued a temporary injunction "[b]ecause CoreCivic has no special use permit to operate a detention center, jail, or prison."  Temporary Injunction (Dkt. No. 45), at 5.  The state court temporarily enjoined CoreCivic from operating the Property as a jail or prison pending a full determination on the merits or as "otherwise expressly permitted … by this Court or another court of competent jurisdiction." *Id.* at 6.  CoreCivic has timely appealed the state court's injunction.

<u>**COUNT I**</u>
**VIOLATION OF 42 U.S.C. § 1983 – DECLARATORY JUDGMENT/PERMANENT INJUNCTION REGARDING SUPREMACY CLAUSE**

42.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

43.    Defendant City of Leavenworth is a municipal corporation and is a "person" within the meaning of 42 U.S.C. § 1983.

44.     Resolution B-2394 was taken under color of state law and pursuant to official

---

[4] The City's amended petition also asserts claims against CoreCivic's Warden Misty Mackey for public nuisance, injunctive relief, and aiding and abetting CoreCivic. *Id.* at 21 (Count II), 23 (Count III), 24 (Count IV).

municipal policy or custom, as reflected by a formal vote and adoption by the City Commission, and its exercise of policymaking authority with respect to land use and zoning decisions.

45.    The City's enforcement of Resolution B-2394 to prohibit CoreCivic from operating a civil detention facility on the Property without first obtaining a SUP violates rights secured to CoreCivic by the Constitution and laws of the United States.

46.    The City's enforcement of Resolution B-2394 to prohibit CoreCivic from operating a civil detention facility on the Property without first obtaining a SUP regulates the operations of the Federal Government by obstructing, controlling, burdening and substantially interfering with federally authorized or mandated activity, in violation of rights secured by the Constitution and laws of the United States, including but not limited to the Supremacy Clause of Article VI of the Constitution.

47.    Federal immigration law provides that ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," and "[w]hen United States facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General [now ICE] may expend . . . amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities . . . necessary for detention." 8 U.S.C. § 1231(g)(1).

48.    Congress has instructed that ICE "shall consider the availability for purchase *or lease* of any existing prison, jail, detention center, or other comparable facility suitable for [detention]" before beginning any project to develop a new detention facility.  8 U.S.C. § 1231(g)(2) (emphasis added).

49.    Section 1231(g)(1) vests ICE with broad discretion to determine where aliens are detained. *See also* 28 U.S.C. § 530C(a)(4) (authorizing Attorney General/ICE, in their "reasonable

discretion," to carry out the activities of the Department of Justice "through any means," including "through contracts, grants, or cooperative agreements with non-Federal parties").

50.     The City's actions directly and proximately caused Plaintiff to suffer violations of constitutional rights, including but not limited to interference with Plaintiff's contractual or statutory obligations to the Federal Government, delay or denial of use of its Property, and exposure to legal, financial, and operational harm.

51.     The City's conduct constitutes an actionable violation of 42 U.S.C. § 1983. CoreCivic is therefore entitled to declaratory and injunctive relief, attorneys' fees under 42 U.S.C. § 1988, and all other just and proper relief.

## COUNT II
### VIOLATION OF 42 U.S.C. § 1983 – DECLARATORY JUDGMENT/PERMANENT INJUNCTION REGARDING VIOLATION OF INTERGOVERNMENTAL IMMUNITY/DIRECT REGULATION

52.     Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

53.     CoreCivic, as a contractor for the United States, enjoys and is clothed in the Federal Government's intergovernmental immunity under the Supremacy Clause.

54.     Intergovernmental immunity "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals." *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022) (emphasis in original, citation omitted).

55.     Congress has not authorized the City of Leavenworth to interfere with the Federal Government's activities with respect to private detention facilities like CoreCivic's.

56.     Resolution No. B-2394 prohibits the Federal Government from operating with its

desired personnel and exercising its discretion to arrange for immigration detention in the privately run facilities it has deemed appropriate.

57.    Resolution No. B-2394 is unconstitutional, and invalid as applied to CoreCivic's operations at the Property on behalf of ICE, under the principle of intergovernmental immunity/direct regulation.

58.    The City's actions directly and proximately caused Plaintiff to suffer violations of constitutional rights, including but not limited to interference with Plaintiff's contractual or statutory obligations to the Federal Government, delay or denial of use of its Property, and exposure to legal, financial, and operational harm.

59.    The City's conduct constitutes an actionable violation of 42 U.S.C. § 1983. CoreCivic is therefore entitled to declaratory and injunctive relief, attorneys' fees under 42 U.S.C. § 1988, and all other just and proper relief.

## COUNT III
## VIOLATION OF 42 U.S.C. § 1983 – DECLARATORY JUDGMENT/PERMANENT INJUNCTION REGARDING VIOLATION OF INTERGOVERNMENTAL IMMUNITY/DISCRIMINATION

60.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

61.    The City has applied the Resolution to CoreCivic's operations at the Property on behalf of ICE for reasons particular to CoreCivic's role as a federal contractor housing civil immigration detainees.

62.    Resolution No. B-2394 is unconstitutional, and invalid as applied to CoreCivic's operations at the Property on behalf of ICE, under the principle of intergovernmental immunity/discrimination.

63.    The City's actions directly and proximately caused Plaintiff to suffer violations of constitutional rights, including but not limited to interference with Plaintiff's contractual or statutory obligations to the Federal Government, delay or denial of use of its Property, and exposure to legal, financial, and operational harm.

64.    The City's conduct constitutes an actionable violation of 42 U.S.C. § 1983. CoreCivic is therefore entitled to declaratory and injunctive relief, attorneys' fees under 42 U.S.C. § 1988, and all other just and proper relief.

<u>COUNT IV</u>
**VIOLATION OF 42 U.S.C. § 1983 – DECLARATORY JUDGMENT PERMANENT INJUNCTION REGARDING FEDERAL PREEMPTION OF STATE LAW**

65.    Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

66.    By prohibiting ICE's use of the Property as a detention facility for civil immigration detainees, Resolution No. B-2394 reduces ICE's discretion to determine where to house federal immigration detainees, and it prohibits a means of federal detention that Congress authorized.  It frustrates Congress's delegation of discretion to ICE to discharge its Constitutional and statutory responsibilities, and it obstructs the Federal Government's contracting decisions by displacing the Federal Government's determination of what immigration detention facilities are "appropriate."  8 U.S.C. § 1231(g)(1).

67.    Resolution No. B-2394 is therefore in conflict with federal immigration law, interferes with the purpose behind the federal immigration law, and presents a substantial obstacle to the purposes of Congress in enacting the federal immigration law.

68.    Resolution No. B-2394 is unconstitutional and invalid as applied to CoreCivic's operations at the Property on behalf of ICE under principles of conflict and obstacle preemption.

69. The City's actions directly and proximately caused Plaintiff to suffer violations of constitutional rights, including but not limited to interference with Plaintiff's contractual or statutory obligations to the Federal Government, delay or denial of use of its Property, and exposure to legal, financial, and operational harm.

70. The City's conduct constitutes an actionable violation of 42 U.S.C. § 1983. CoreCivic is therefore entitled to declaratory and injunctive relief, attorneys' fees under 42 U.S.C. § 1988, and all other just and proper relief.

## PRAYER FOR RELIEF

WHEREFORE, CoreCivic respectfully requests that this Court enter judgment:

a. Declaring that the City of Leavenworth's requirement that CoreCivic obtain a local Special Use Permit before operating a federal detention facility at 100 Highway Terrace in Leavenworth, Kansas, is unconstitutional and unenforceable;

b. Declaring that Resolution No. B-2394, as applied to CoreCivic's operations at the Property on behalf of ICE, violates the Supremacy Clause of the United States Constitution and the doctrine of intergovernmental immunity;

c. Permanently enjoining the City of Leavenworth, as well as its successors, agents, employees, and all those under its supervision, from enforcing or attempting to enforce Resolution No. B-2394 as to CoreCivic's operations at the Property on behalf of ICE;

d. Awarding CoreCivic its costs, attorneys' fees, and any other relief to which it may be entitled under 42 U.S.C. § 1988 or as justice requires; and

e. Granting such other and further relief as the Court deems just and proper.

16

Dated:  August 8, 2025

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Jacob N. Reinig*
Jacob N. Reinig, MO Bar #72247
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: 816-983-8000
Facsimile: 816-983-80280
Jake.Reinig@huschblackwell.com


SCHLAM STONE & DOLAN LLP

Bradley D. Simon (pro hac vice forthcoming)
Thomas A. Kissane  (pro hac vice forthcoming)
26 Broadway, 19th Fl.
New York, New York 10004
Telephone: (212) 344-5400
Fax: (212) 344-7677
bsimon@schlamstone.com
tkissane@schlamstone.com

*Attorneys for Plaintiff CoreCivic, Inc.*

17