## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CORECIVIC, INC.,                              )
                                             )
              Plaintiff,                   )
                                             )
v.                                           )
                                             )
CITY OF LEAVENWORTH, KANSAS,                 )
MAYOR HOLLY PITTMAN, MAYOR PRO               )          Case No. 2:25-cv-2457-TC-GEB
TEM NANCY BAUDER, COMMISSIONERS              )
GRIFF MARTIN, JERMAINE WILSON AND            )
EDD HINGULA, IN THEIR OFFICIAL               )
CAPACITIES AS MEMBERS OF THE                 )
LEAVENWORTH CITY COMMISSION.                 )
                                             )
              Defendants.                  )


### PLAINTIFF CORECIVIC'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

# **TABLE OF CONTENTS**

ARGUMENT .................................................................................................................. 1

I.    CORECIVIC IS LIKELY TO SUCCED ON ITS CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 U.S.C. §1983 PREMISED ON VIOLATION OF THE SUPREMACY CLAUSE ............................................................................... 2

    A.    CoreCivic Is Likely To Succeed On Its Claims That Enforcement Of The Resolution Violates The Supremacy Clause ................................................ 3

        i.    Intergovernmental Immunity .......................................................... 3

            a.    Intergovernmental immunity – direct regulation ........................... 4

            b.    Intergovernmental immunity – discrimination .............................. 5

        ii.    Conflict/Obstacle Preemption ...................................................... 6

    B.    Neither Principles Of Abstention Nor The Anti-Injunction Act  Bar The Relief CoreCivic Seeks ............................................................................... 10

        i.    Abstention Is Inapplicable ........................................................... 10

        ii.    The Anti-Injunction Act Does Not Bar The Relief Sought By CoreCivic 11

II.    CORECIVIC WILL SUFFER IRREPARABLE INJURY ABSENT THE REQUESTED RELIEF    13

III.    THE BALANCE OF HARMS AND CONSIDERATIONS OF THE PUBLIC INTEREST FAVOR CORECIVIC'S APPLICATION ................................................... 14

CONCLUSION ........................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                   **Page(s)**

*Arizona v. United States,*
   567 U.S. 387 (2012) ................................................................................................................. 2, 6

*Behalf of Blockchain Game Partners, Inc. v. Thurston,*
   697 F. Supp. 3d 1265 (D. Utah 2023) ................................................................................. 13

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC,*
   562 F.3d 1067 (10th Cir. 2009) ............................................................................................. 1

*Blue Circle Cement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Rogers,*
   27 F.3d 1499 (10th Cir. 1994) ............................................................................................... 8

*Brown v. Kerr–McGee Chem. Corp.,*
   767 F.2d 1234 (7th Cir.1985) ............................................................................................... 9

*Bullington v. United Air Lines, Inc.,*
   186 F.3d 1301 (10th Cir. 1999) ............................................................................................ 6

*Cattle Fin. Co. v. Boedery, Inc.,*
   795 F. Supp. 362 (D. Kan. 1992) ........................................................................................ 13

*CCMS Pub. Co. v. Dooley-Maloof, Inc.,*
   645 F.2d 33 (10th Cir. 1981) ............................................................................................... 12

*Chamber of Com. of U.S. v. Edmondson,*
   594 F.3d 742 (10th Cir. 2010) ........................................................................................ 2, 14

*Cheyenne and Arapaho Tribes v. First Bank & Trust Co.,*
   560 Fed. App'x. 699 (10th Cir. 2014) ................................................................................ 12

*CoreCivic, Inc. v. Governor of New Jersey,*
   No. 23-2598, 2025 WL 2046488 (3d Cir. July 22, 2025) ................................................. 4, 5

*CoreCivic, Inc. v. Governor of New Jersey,*
   690 F. Supp. 3d 467 (D.N.J. 2023) ...................................................................................... 4

*Courthouse News Serv. v. New Mexico Admin. Off. of Cts.,*
   53 F.4th 1245 (10th Cir. 2022) ....................................................................................... 3, 11

*Couser v. Shelby Cnty. Iowa,*
   681 F. Supp. 3d 920 (S.D. Iowa 2023) ................................................................................ 3

*Crosby v. Nat'l Foreign Trade Council,*
   530 U.S. 363 (2000) ............................................................................................................. 7

*Davis v. Mineta,*
    302 F.3d 1104 (10th Cir. 2002) .............................................................................. 14

*Drake v. City of Fort Collins,*
    927 F.2d 1156 (10th Cir. 1991) ................................................................................ 6

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
    458 U.S. 141 (1982) ................................................................................................. 7

*Fish v. Kobach,*
    840 F.3d 710 (10th Cir. 2016) .................................................................................. 7

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado,*
    916 F.3d 792 (10th Cir. 2019) ............................................................................ 3, 13

*Grafton & Upton R. Co. v. Town of Milford,*
    337 F. Supp. 2d 233 (D. Mass. 2004) ...................................................................... 8

*Hancock v. Train,*
    426 U.S. 167 (1976) ............................................................................................. 3, 5

*Helfrich v. Blue Cross & Blue Shield Ass'n,*
    804 F.3d 1090 (10th Cir. 2015) ............................................................................... 3

*Hines v. Davidowitz,*
    312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 ................................................................ 6

*Immigrant Legal Res. Ctr. v. City of McFarland,*
    827 F. App'x 749 (9th Cir. 2020) ............................................................................ 5

*In Geo Grp., Inc. v. Newsom,*
    50 F.4th 745 (9th Cir. 2022) ................................................................................. 4, 7

*In re Universal Serv. Fund Tel. Billing Prac. Litig.,*
    619 F.3d 1188 (10th Cir. 2010) ............................................................................... 7

*Kikumura v. Hurley,*
    242 F.3d 950 (10th Cir. 2001) ............................................................................... 13

*Leslie Miller, Inc. v. Arkansas,*
    352 U.S. 187 (1956) ............................................................................................. 5, 7

*Mitchum v. Foster,*
    407 U.S. 225, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972) ........................................ 12

*North Dakota v. United States,*
    495 U.S. 423 (1990) ................................................................................................. 2

*Perez v. Campbell,*
    402 U.S. 637 (1971) ...................................................................................................... 8

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,*
    793 F.3d 1177 (10th Cir. 2015) .................................................................................... 10

*Pub. Utils. Comm'n of California v. United States,*
    355 U.S. 534 (1958) ...................................................................................................... 5

*Quackenbush v. Allstate Ins. Co.,*
    517 U.S. 706 (1996) .................................................................................................... 10

*RoDa Drilling Co. v. Siegal,*
    552 F.3d 1203 (10th Cir. 2009) .................................................................................... 13

*Rodriguez v. Brown,*
    No. 21-1124, 2022 WL 3453401 (10th Cir. Aug. 18, 2022) ........................................ 6

*Skull Valley Band Of Goshute Indians v. Nielson,*
    376 F.3d 1223 (10th Cir. 2004) ..................................................................................... 9

*Sprint Commc'ns, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ...................................................................................................... 10

*Sw. Air Ambulance, Inc. v. City of Las Cruces,*
    268 F.3d 1162 (10th Cir. 2001) .................................................................................... 11

*Sw. Bell Wireless Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs,*
    199 F.3d 1185 (10th Cir. 1999) ..................................................................................... 3

*Tri Cnty. Tel. Ass'n, Inc. v. Campbell,*
    No. 20-8053, 2021 WL 4447909 (10th Cir. June 16, 2021) ........................................ 10

*Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,*
    805 F.2d 351 (10th Cir. 1986) ...................................................................................... 13

*United States v. King Cnty., Washington,*
    122 F.4th 740 (9th Cir. 2024) ........................................................................................ 3

*United States v. Locke,*
    529 U.S. 89 (2000) ........................................................................................................ 7

*United States v. State of Utah,*
    No. 2:13-CV-00332-DN, 2013 WL 12110098 (D. Utah July 19, 2013) ....................... 5

*United States v. Washington,*
    596 U.S. 832 (2022) ............................................................................................... 2, 4, 6

iv

*US Airways, Inc. v. O'Donnell*,
 627 F.3d 1318 (10th Cir. 2010) ................................................................ 6

*Wagher v. Guy's Foods, Inc.*,
 256 Kan. 300, 885 P.2d 1197 (Kan. 1994) ............................................. 6

*Wyles v. Sussman*,
 661 F. App'x 548 (10th Cir. 2016) ......................................................... 10

*Younger v. Harris*,
 401 U.S. 37 (1971) ................................................................................. 10

**Regulations**

28 U.S.C. § 1651 ...................................................................................... 11

28 U.S.C. § 2283 ...................................................................................... 11

42 U.S.C. § 6901 ........................................................................................ 8

42 U.S.C. §1983 ................................................................... 2, 10, 11, 12

52 U.S.C. § 20504 ...................................................................................... 7

8 U.S.C. §§1101–1537 ............................................................................... 2

Cal. Penal Code § 9501 .............................................................................. 4

Utah Code Ann. § 17–27–301(3)(a) ......................................................... 9

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................ 15

**Other Authorities**

AB 32 .................................................................................................... 4, 5

AB 5207 ..................................................................................................... 4

Plaintiff CoreCivic, Inc. ("CoreCivic") submits this brief in support of its application for 1) a preliminary injunction against enforcement of a Kansas District Court temporary injunction (the "State Temporary Injunction"), which gives immediate effect to a resolution of the Leavenworth City Planning Commission ("the Resolution") rescinding CoreCivic's long-established and until-recently-undisputed right to operate a detention center at 100 Highway Terrace in Leavenworth, Kansas (the "Property"), and 2) for a declaration that the Resolution violates the Supremacy Clause by preventing CoreCivic from operating a civil immigrant detention center at the Property and thereby interfering with the Federal Government's immigration enforcement operations.

We understand that, upon completion of the required review process, the United States is likely to file a statement of interest in support of CoreCivic's effort to protect its longstanding right to operate a detention center at the Property, including an immigrant detention center (in coordination with United States Immigrations Customs Enforcement ("ICE") referred to herein as the "Midwest Facility." *See* Declaration of Bradley D. Simon (the "Simon Dec."), ¶ 3 & n. 1.

## **ARGUMENT**

Movant on a preliminary injunction must show "that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). CoreCivic shows below that the Resolution unlawfully interferes with the Federal Government's immigration enforcement operations and CoreCivic's right to contract with ICE, and CoreCivic meets the standard for preliminary relief.

I.    **CORECIVIC IS LIKELY TO SUCCED ON ITS CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER 42 U.S.C. §1983 PREMISED ON VIOLATION OF THE SUPREMACY CLAUSE**

The Federal Government's exclusive authority over immigration, arising principally under the Immigration and Nationality Act, 8 U.S.C. §§1101–1537 (the "INA"), includes immigrant detention. Simon Dec., ¶¶ 5–7. "State law may run afoul of the Supremacy Clause in two distinct ways: The law may regulate the Government directly or discriminate against it . . . or it may conflict with an affirmative command of Congress." *North Dakota v. United States*, 495 U.S. 423, 434 (1990) (citations omitted).   The first of these principles is commonly known as intergovernmental immunity, the second as preemption.  Intergovernmental immunity "prohibit[s] state laws that *either* 'regulat[e] the United States directly *or* discriminat[e] against the Federal Government or those with whom it deals.'" *United States v. Washington*, 596 U.S. 832, 838 (2022) (emphasis in original, citation omitted).  Conflict or obstacle preemption prevents state or local actions that substantially interfere with the purposes of Congress as manifested by the federal statutory or regulatory scheme. *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 767 (10th Cir. 2010) (sustaining preliminary injunction against enforcement of two provisions[1] of Oklahoma law as likely preempted by federal immigration law: "plaintiffs will likely succeed in their argument that the provision interferes with Congress' chosen methods and is thus conflict preempted.")

"While land use can be regulated, the power of governmental regulation is not boundless. All governmental land-use regulation is subject to constitutional limitations."  Patrick B. Hughes, *What Can They Do? Limitations on the Power of Local Zoning Authorities*, J. Kan. B. Ass'n,

---

[1] *Edmondson* found a likelihood of express preemption as to one provision and a likelihood of conflict/obstacle preemption as to another.  CoreCivic's application at bar relies only on conflict/obstacle preemption.

January 2007, at 29.  Regulations and ordinances like the Resolution cannot survive when they

violate the Supremacy Clause,[2] and are properly subject to preliminary restraint.  *See, e.g.*,

*Courthouse News Serv. v. New Mexico Admin. Off. of Cts.*, 53 F.4th 1245 (10th Cir. 2022)

(confirmed the propriety of preliminary injunction allowing access to civil complaints in state

district courts.)

> **A.    CoreCivic Is LikelyTo Succeed On Its Claims That Enforcement Of The Resolution Violates The Supremacy Clause**

Principles of both intergovernmental immunity and conflict/obstacle preemption bar

enforcement of the Resolution to prevent CoreCivic from operating an immigrant detention

center at the Property under agreement with ICE.

> i.    <u>Intergovernmental Immunity</u>

The doctrine of intergovernmental immunity precludes state regulation of the Federal

Government.  *Hancock v. Train,* 426 U.S. 167, 178 (1976) (citation omitted) ("the effect of this

corollary, which derives from the Supremacy Clause. . . is 'that the activities of the Federal

Government are free from regulation by any state.'")  Intergovernmental immunity applies when

---

[2] *See, e.g.*,  *United States v. King Cnty., Washington,* 122 F.4th 740, 756–57 (9th Cir. 2024) (affirming summary judgment enjoining enforcement, as barred by intergovernmental immunity, of County Executive order prohibiting local airports from accepting ICE flights); *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado,* 916 F.3d 792, 804-05 (10th Cir. 2019) (enjoining city ordinance regarding male and female toplessness as likely in violation of U.S. Constitution's Equal Protection Clause);  *Helfrich v. Blue Cross & Blue Shield Ass'n,* 804 F.3d 1090, 1099 (10th Cir. 2015) (state insurance regulation that undermined federal interest in uniformity of benefits for plan enrollees preempted by federal common and statutory law); *Sw. Bell Wireless Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs,* 199 F.3d 1185, 1188 (10th Cir. 1999) (county zoning regulation involving radio frequency interference preempted by federal law); *Couser v. Shelby Cnty. Iowa*, 681 F. Supp. 3d 920, 943-44 (S.D. Iowa 2023) (ordinances passed by County Board of Supervisors, at recommendation of County Planning and Zoning Commission, enjoined as preempted by federal law), *appeal dismissed*, No. 23-2818, 2024 WL 440768 (8th Cir. Jan. 16, 2024).

state or local laws either impermissibly regulate the Federal Government, or single it or its contractors out for less favorable treatment. *United States v. Washington*, *supra*, 596 U.S. at 833.

a.    *Intergovernmental immunity – direct regulation*

In *CoreCivic, Inc. v. Governor of New Jersey,* No. 23-2598, 2025 WL 2046488 (3d Cir. July 22, 2025), the Third Circuit enjoined enforcement of a New Jersey law that forbade private facilities from contracting to house civil immigrant detainees. After the district court enjoined enforcement against CoreCivic on both intergovernmental immunity/direct regulation[3] and preemption grounds in *CoreCivic, Inc. v. Murphy,* 690 F. Supp. 3d 467 (D.N.J. 2023), the Third Circuit affirmed on grounds of intergovernmental immunity, finding the law to impermissibly "restrict [the Federal Government's] ability to hire whom it chooses." 2025 WL 2046488, at *6.

In *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022), the Ninth Circuit cited intergovernmental immunity[4] when enjoining enforcement of a California State statute that forbade use of private immigration detention facilities in violation of the Supremacy Clause's protection "against state laws that would 'in any manner control ... the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government.'"

---

[3] The district court found direct regulation sufficient to resolve the question of intergovernmental immunity. 690 F. Supp. 3d at 485 ("Given its conclusion, the Court declines to reach Plaintiff's and the United States's alternative argument that AB 5207 violates intergovernmental immunity by discriminating against the federal government and those with whom it deals.")

[4] *Geo. Grp.* found the California statute before it failed upon either an intergovernmental immunity or a preemption analysis. 50 F.4th at 761 (footnote omitted) ("Even assuming it is a neutral regulation of private conduct, *see* Cal. Penal Code § 9501, AB 32 prohibits ICE from exercising its discretion to arrange for immigration detention in the privately run facilities it has deemed appropriate. Therefore, we reject California's argument that AB 32 does not implicate intergovernmental immunity. [¶]We likewise disagree with California's contention that AB 32 is not preempted.")

Both *Geo Grp.* and *CoreCivic v. Governor of New Jersey* drew on and analyzed extensive Supreme Court authority confirming that state or local action that substantially interferes with federal operations constitutes direct regulation forbidden by the doctrine of intergovernmental immunity.  These authorities confirm that, because it prevents the Federal Government from housing civil immigration detainees at the Property under agreement with CoreCivic, the Resolution impermissibly regulates the Federal Government's immigration operations.  *See, e.g., Hancock*, *supra*, 426 U.S. at 180 (applying intergovernmental immunity to bar application to federal contractor of state permit requirement where "[w]ithout a permit, an air contaminant source is forbidden to operate even if it is in compliance with every other state measure respecting air pollution control and abatement" ); *Leslie Miller, Inc. v. Arkansas,* 352 U.S. 187, 258–59 (1956) ("Subjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of 'responsibility' and would thus frustrate the expressed federal policy of selecting the lowest responsible bidder").[5]

b.      *Intergovernmental immunity – discrimination*

The Resolution is addressed only to CoreCivic's ability to operate a detention center at the Property.  No other entity or property is named or considered.  Moreover, the City's state court

---

[5] *See also Pub. Utils. Comm'n of California v. United States*, 355 U.S. 534, 544 (1958) (state law that operated facially against contractors "places a prohibition on the Federal Government "and "the conflict between the federal policy of negotiated rates and the state policy of regulation of negotiated rates seems to us to be clear"); *Immigrant Legal Res. Ctr. v. City of McFarland*, 827 F. App'x 749 (9th Cir. 2020) (vacating preliminary injunction that compelled city to revoke approval of proposed modifications to conditional use permits that would allow federal government contractor to house federal immigration detainees at its private correctional facilities); *United States v. State of Utah*, No. 2:13-CV-00332-DN, 2013 WL 12110098, at *1 (D. Utah July 19, 2013) (provisions that limited discretion of the U.S. Secretaries of the Interior and Agriculture to enforce state law as authorized by federal regulations enjoined as violative of intergovernmental immunity).

filings make plain that Defendants issued the Resolution based in substantial part on an eight-year-old report that criticized CoreCivic's performance in its role as federal contractor at the Property, without considering the performance of any other state, local, federal or private detention facility. Simon Dec., ¶¶18–19. Raising criticism without considering the performance of comparables is a form of disparate treatment that evidences discrimination.[6] Because Defendants turned their critical focus to CoreCivic's operations at the Property without any consideration of other detention facilities, the Resolution singles CoreCivic out "for less favorable treatment" in violation of intergovernmental immunity's discrimination prong. *United States v. Washington, supra*, 596 U.S. at 839.

      ii.       <u>Conflict/Obstacle Preemption</u>

As the Supreme Court wrote in *Arizona v. United States*, 567 U.S. 387, 399 (2012), "state laws are preempted when they . . . stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Such "conflict" or "obstacle" preemption, like all forms of preemption, "is ultimately a question of congressional intent." *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010). "'The relative importance to the State of its own law is not material when there is a conflict with a valid

---

[6] *See, e.g., Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999) ("a comparative analysis of job applicants' qualifications may be relevant in proving pretext where, as here, the employer claims lack of qualification as reason for an employment decision."), *overruling in part on other grounds recognized by Rodriguez v. Brown*, No. 21-1124, 2022 WL 3453401, at *2 (10th Cir. Aug. 18, 2022); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1160 (10th Cir. 1991) ("the City continued to screen its applicants to fill remaining available positions on the police force, including applicants Boal and Svoboda, who, like plaintiff, lacked the required two years of college. We conclude that plaintiff has made out a prima facie case of racial discrimination under the disparate treatment theory."); *see also Wagher v. Guy's Foods, Inc.*, 256 Kan. 300, 316–17, 885 P.2d 1197, 1208–09 (Kan. 1994) (jury permissibly relied upon employer's departure from anti-nepotism policy in other instances to reject policy as non-discriminatory justification for challenged action).

federal law, for the Framers of our Constitution provided that the federal law must prevail.'" *Sw. Bell Wireless Inc. v. Johnson Cnty. Bd. of Cnty. Comm'rs, supra,* 199 F.3d at 1194 (affirming summary judgment granting injunction against enforcement of county zoning regulation involving radio frequency interference found to be preempted by the federal Communication Act), *quoting Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153 (1982).

The INA and its regulations authorize ICE to contract for private detention of civil immigrants.  Simon Dec., ¶¶ 5–7. In forbidding CoreCivic from providing immigrant detention service to ICE at the Property, the Resolution "create[es] a 'conflict [with] the action which Congress and the Department [of Homeland Security] have taken to insure the' appropriateness of facilities to house detainees," and is thus subject to conflict/obstacle preemption.[7]  *Geo. Grp., supra*, 50 F.4th at 762,[8] quoting, *Leslie Miller, supra*, 352 U.S. at 190; *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 376–79 (2000) (state statute imposing sanctions on the nation of Burma (now Myanmar) that differed from the federal sanctions regime to be subject to conflict preemption); *Fish v. Kobach,* 840 F.3d 710, 756 (10th Cir. 2016) (Kansas law requiring documentary proof of citizenship preempted by the National Voter Registration Act, 52 U.S.C. § 20504); *In re Universal Serv. Fund Tel. Billing Prac. Litig.,* 619 F.3d 1188, 1196 (10th Cir. 2010) (state law regarding assertedly unconscionable arbitration clauses preempted by the Federal Communications Act's principle favoring uniformity in the rates, terms, and conditions offered to

---

[7] No "presumption against preemption" is applicable here because of the Federal Government "significant" (indeed, exclusive) presence in the field of immigrant detention  *United States v. Locke*, 529 U.S. 89, 108 (2000).  *See also Geo Grp.*, 50 F.4th 761-62 ("The Supreme Court has indicated that the presumption does not apply when a state law would interfere with inherently federal relationships"; there, specifically, immigration).

[8] *Geo. Grp.* also found the California statute before it that prohibited contracts for private detention of immigrants to be conflict/obstacle preempted: "[s]uch interference with the discretion that federal law delegates to federal officials goes to the heart of obstacle preemption."

the purchasers of telecommunications services); *Grafton & Upton R. Co. v. Town of Milford,* 337 F. Supp. 2d 233, 240–41 (D. Mass. 2004) (granting preliminary injunction where movant showed municipal zoning regulations were likely preempted by the Interstate Commerce Act).

In *Blue Circle Cement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Rogers*, 27 F.3d 1499 (10th Cir. 1994), the Tenth Circuit considered an ordinance that prevented plaintiff from burning hazardous waste fuels ("HWFs"). The district court granted summary judgment to the defendant board of county commissioners, rejecting plaintiff's claim that the ordinance was preempted by the federal Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq. In reversing, the Tenth Circuit made several observations that are pertinent here:

> . . . the Board merely rests on a hypothetical, standardless possibility that, notwithstanding the Ordinance's specific site requirements, the Board might relent and allow such activity in the future, either by rezoning flood plain land or by granting a variance. This is not a sufficient response. *See, e.g., Ogden* [*Env't Servs. v. City of San Diego*], 687 F.Supp.[1436] at 1446–48 [(S.D. Cal. 1988)] (a standardless permit scheme amounted to a de facto ban). Further, there is nothing in the record identifying what specific safety or health hazards the Board believes would be presented if Blue Circle were to burn HWFs at its cement facility. Nor is there any evidence in the record suggesting that the limits imposed by the Ordinance—such as a one-mile buffer zone, the one-hundred-sixty acre minimum plot size, and the requirement that the site be as nearly square as possible—bear any reasonable relation to a legitimate local concern.

27 F.3d at 1499 (footnotes omitted.)[9]

---

[9] The Circuit also stated that the local official's motives were not relevant to its preemption analysis:

> We can no longer adhere to the aberrational doctrine ... that state law may frustrate the operation of federal law as long as the state legislature in passing its law had some purpose in mind other than one of frustration. Apart from the fact that it is at odds with the approach taken in nearly all our Supremacy Clause cases, such a doctrine would enable state legislatures to nullify nearly all unwanted federal legislation by simply publishing a legislative committee report articulating some state interest or policy—other than frustration of the federal objective—that would be tangentially furthered by the proposed state law.

27 F.3d at 1509, quoting *Perez v. Campbell*, 402 U.S. 637, 651–52, (1971).

Enforcement of the Resolution is therefore subject to conflict/obstacle preemption by the

INA. *See, e.g.*, *Skull Valley*, *supra*, 376 F.3d at 1246:

> We agree with the district court that the County Planning Provisions are preempted. In requiring county land use plans to "address the effects of the proposed [SNF storage] site upon the health and general welfare of the citizens of the state," including "specific measures to mitigate the effects of high-level nuclear waste ... [to] guarantee the health and safety of citizens of the state," Utah Code Ann. § 17–27–301(3)(a), these provisions address matters of radiological safety that are addressed by federal law and that are the exclusive province of the federal government.

The *Skull Valley* court went on to cite with approval *Brown v. Kerr–McGee Chem. Corp.*, 767 F.2d

1234, 1243 n.7 (7th Cir.1985) as "holding that a state court injunction barring storage at a particular

area 'frustrate[d] the objectives of federal law by preventing the NRC from choosing what may be

the most appropriate method of storing this radioactive material' and was therefore preempted."

376 F.3d at 1250.

The Resolution prohibits conduct the INA expressly authorizes the Federal Government to

carry out, and therefore plainly conflicts with the federal immigration scheme. Even if one assumes

that CoreCivic requires a SUP to operate an immigrant detention center at the Property—which it

does not (Simon Dec., ¶¶ 11, 13)—Defendants have identified no standards that CoreCivic could

undertake to satisfy in order to obtain one, and therefore necessarily have not identified how such

standards bear any reasonable relation to a legitimate public concern.

---

In *Skull Valley Band Of Goshute Indians v. Nielson*, 376 F.3d 1223, 1252 (10th Cir. 2004), the Circuit distinguished *Blue Circle Cement* to consider motive as well as effect in finding preemption. To the extent this Court believes it should do the same, there is ample evidence that the Revocation was motivated in substantial part by Defendants' hostility to CoreCivic's role as a federal detention contractor and to immigrant detention. Simon Dec., ¶¶18-19.

**B.     Neither Principles Of Abstention Nor The Anti-Injunction Act Bar The Relief CoreCivic Seeks**

The requested relief is not barred by principles of exceptional [10] federal abstention or the federal anti-injunction act.

      i.     Abstention Is Inapplicable

In *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 717 (1996), the Supreme Court identified "regard for federal-state relations" as among the major concerns behind federal abstention, concluding: "Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the 'independence of state action.'"[11] There is of course no question that this Court has subject-matter jurisdiction over CoreCivic's claims arising under 42 U.S.C. §1983. The question is whether the State Court Action represents "exceptional circumstances" such that this Court should decline the "strict duty to exercise the jurisdiction that is conferred upon [it] by Congress." *Quackenbush*, 517 U.S. at 716. The circumstances of this case do not support such

---

[10] The doctrine of mandatory abstention set forth in *Younger v. Harris,* 401 U.S. 37 (1971) is not applicable here because the State Court Action does not fit within the three "exceptional circumstances" to which the Supreme Court limited *Younger* in *Sprint Commc'ns v. Jacobs,* 571 U.S. 69 (2013).

[11] *See also Tri Cnty. Tel. Ass'n, Inc. v. Campbell*, No. 20-8053, 2021 WL 4447909, at *10 (10th Cir. June 16, 2021) ("parties may simultaneously litigate the same claims in both state and federal court", noting *Wyles v. Sussman*, 661 F. App'x 548, 552 (10th Cir. 2016) (unpublished) as "citing *Colorado River* for the proposition that 'a federal court with jurisdiction isn't barred from hearing a suit concerning the same matter as a suit pending in state court' and vacating and remanding because the district court 'erroneously concluded that [plaintiff's] pending state-court action precluded his parallel federal-court action'"); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1189–90 (10th Cir. 2015) (reversing sanctions imposed on plaintiff for filing patent claim in federal court: "we cannot say that any abstention doctrine made Cogswell's action unreasonable. Some certainly would not justify abstention here. And to the extent that others could justify abstention, they are discretionary, and their application by the district court was not so predictable in this case that to pursue the motion to supplement and amend was legally unwarranted.")

an exercise of discretion, for the presiding judge in the State Court Action (the Hon. John Bryant) has declined to address the merits and elected to defer to this Court respecting the issues raised in this action. Simon Dec., ¶¶ 22–24 & Exhibit 8 (noting, at p. 3, that "if Defendant is successful in the newly filed federal case, it would appear to make any decisions in this matter moot.")

*Sw. Air Ambulance, Inc. v. City of Las Cruces,* 268 F.3d 1162 (10th Cir. 2001) demonstrates that abstention under these circumstances would not only fail to advance, but would actually violate, the principles of comity that underly abstention.  There, an ambulance service brought §1983 claims challenging the legality and enforcement of a municipal ordinance setting fees at the Las Cruces International Airport.  The city filed criminal charges in municipal court against the president of the ambulance service for violation of the ordinance, and the municipal court "stayed its own proceedings in favor of federal resolution of the issues." 268 F.3d at 1178.  The Circuit reversed the district court's decision to abstain:

> *Younger* abstention is, in essence, a doctrine founded on comity and in our view, abstaining from exercising federal jurisdiction and sending the case back to the municipal court (after that court had decided *sua sponte* to stay the proceeding), would function as something close to a writ of mandamus which would not be in harmony with the comity *Younger* was designed to foster.

*Id.*; *see also Courthouse News Serv.*, *supra*, 53 F.4th at 1256 (affirming district court's finding against abstention in action seeking access to newly filed, non-confidential civil complaints in state district courts on First Amendment grounds.)

ii.    The Anti-Injunction Act Does Not Bar The Relief Sought By CoreCivic

The Anti-Injunction Act, 28 U.S.C. § 2283, provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

"[A]ctions brought under 42 U.S.C.A. §1983 are 'expressly authorized' by statute and excepted from the ban on injunctions."[12]  On this application, CoreCivic is not asking the Court to stay the State Court Action except to the limited extent necessary to preserve this Court's jurisdiction to resolve the federal claims.  Unless the State Temporary Injunction is stayed pending the outcome of those claims, the Property will likely be shut down permanently before CoreCivic's federal claims can be addressed.  *See* Verhulst Dec., ¶16. If the Court nonetheless concludes that the Anti-Injunction Act bars the requested preliminary injunction, it should still grant the declaratory relief that CoreCivic seeks.  *Cheyenne and Arapaho Tribes v. First Bank & Trust Co.*, 560 Fed. App'x. 699 (10th Cir. 2014), is illustrative.  There, Native American tribes brought a federal action seeking injunctive and declaratory relief from state court proceedings that allegedly violated their federal rights.  In rejecting the tribe's argument that at least their declaratory claims were permissible under the Anti-Injunction Act, the Circuit found that the Anti-Injunction Act applied as a bar only because the state court judge "did not manifest a willingness to await a federal declaration regarding the state court's jurisdiction." *Id.* at 707. Here, Judge Bryant has manifested a willingness to await a federal declaration regarding the issues raised by CoreCivic's claims at bar—and, indeed, has determined to defer the proceedings before him pending determinations by this Court that could render the State Court Action moot (Simon Dec., ¶ 22 & Exhibit 8).  Grant of CoreCivic's application for declaratory relief confirming that the Resolution violates the Supremacy Clause, so that Judge Bryant may determine the effect of that declaration on the State

---

[12] § 73:125. Exceptions to statutory prohibition of restraint of state court proceedings, generally, 14A Cyc. of Federal Proc. § 73:125 (3d ed.) (Aug. 2025 update), *citing Mitchum v. Foster*, 407 U.S. 225, 92 S. Ct. 2151, 32 L. Ed. 2d 705 (1972); see also *CCMS Pub. Co. v. Dooley-Maloof, Inc.*, 645 F.2d 33, 38 (10th Cir. 1981) ("A federal court may enjoin state proceedings where necessary to protect or effectuate its judgments." citing *Mitchum*, 407 U.S. at 235–36.)

Temporary Injunction (and the State Court Action more generally), would therefore be consonant with the Anti-Injunction Act.

## II. CORECIVIC WILL SUFFER IRREPARABLE INJURY ABSENT THE REQUESTED RELIEF

But for the Resolution, CoreCivic would be operating the Midwest Facility under agreement with ICE, generating tens of millions in revenue annually. Verhulst Dec., ¶14. As a result, CoreCivic meets the irreparable injury requirement in three distinct and independently-sufficient ways:

- CoreCivic's injuries will result from Defendants' unconstitutional actions. "'When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary'". *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001), quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (2d ed.1995)); *see also Free the Nipple-Fort Collins, supra*, 916 F.3d at 806.

- CoreCivic's damages from lost investment, uncertainty regarding ongoing investments, and disruption of its decades-long relationship with the Federal Government, including but not limited to with ICE for immigrant detention, Verhulst Dec., ¶¶7, 14–18, are of a kind that have been recognized as "irreparable" for these purposes. *See, e.g.*, *RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1211 (10th Cir. 2009).

- The City has indicated that it has reserved approximately $5 million "to cover any reasonable damages CoreCivic could claim for a wrongful injunction", Simon Dec., ¶27 (quoting City's state court papers), while CoreCivic's damages from inoperancy of the Midwest Facility—which has already lasted over six months (Simon Dec., ¶26)—are approximately $4 million per month or almost $50 million per year, Verhulst Dec., ¶14, and there is no apparent way for the City to cover the difference. Simon Dec., ¶30. Compare with *Behalf of Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1272 (D. Utah 2023) (plaintiff's economic loss may "be irreparable if he can show that the defendant will not have the money to pay for the loss after trial," citing *Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986) *and Cattle Fin. Co. v. Boedery, Inc.*, 795 F. Supp. 362, 364 (D. Kan. 1992) (where "serious doubt has been cast on Boerdery's [sic] ability to pay a money judgment of the magnitude that would likely be ordered if the plaintiffs were to prevail on the merits . . . the court concludes that the evidence supports the plaintiffs' fears that Boerdery [sic] would be unable to pay a monetary judgment, and a finding of irreparable injury is therefore justified.").

Each of the three reasons above establish that CoreCivic has made the necessary showing of irreparable injury.

## III.     THE BALANCE OF HARMS AND CONSIDERATIONS OF THE PUBLIC INTEREST FAVOR CORECIVIC'S APPLICATION

The injury to CoreCivic absent the requested relief outweighs any harm Defendant may incur if this application is granted, and the public interest favors granting CoreCivic that relief. CoreCivic has operated the Property as a "jail or prison" within the meaning of the Dev. Regs. to house federal detainees for most of the past thirty years—including, since amendment of the Regulations in 2012, without the SUP Defendants now say that amendment requires. Simon Dec., ¶¶11–13. Moreover, the Midwest Facility is essential to ICE's operations in enforcing the federal immigration laws. Acosta Dec., ¶¶9–12. Defendants can identify no harm they would suffer that would equal the harm to CoreCivic, to ICE and to the public from denying CoreCivic the right to continue its historic use of the Property for federal detention and, in any event, the public interest is served by an injunction against a law that "is likely constitutionally infirm." *Chamber of Com. v. Edmondson*, *supra*, 594 F.3d at 771.[13]

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff CoreCivic respectfully requests that the Court issue 1) a preliminary injunction, pending resolution of CoreCivic's claims in this action, staying enforcement of the State Temporary Injunction so as to recognize CoreCivic's right to operate a civil immigrant detention center at the Property and/or to negotiate toward, enter into, and perform

---

[13] CoreCivic requests that the Court direct the posting of a bond under Fed. R. Civ. P. 65(c) not to exceed $10,000. *Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002) (noting that, where movant seeks to vindicate the public's interest, as CoreCivic seeks to here by enabling ICE's effective enforcement of federal immigration law, "a minimal bond amount should be considered," *abrogation on other grounds recognized by W. Watersheds Project v. Vilsack*, No. 23-8081, 2024 WL 4589758, at *6 (10th Cir. Oct. 28, 2024.)

under a subsequent agreement with ICE for that purpose, and 2) a declaration that the Resolution violates the Supremacy Clause.

Dated:  September 15, 2025

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Kyle Tanner*
Kyle Tanner, KS Bar #29866
Jacob N. Reinig, MO Bar #72247
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: 816-983-8000
Facsimile: 816-983-80280
Kyle.Tanner@huschblackwell.com
Jake.Reinig@huschblackwell.com

**SCHLAM STONE & DOLAN LLP**

*/s/ Bradley D. Simon*
Bradley D. Simon (pro hac vice forthcoming)
Thomas A. Kissane (pro hac vice forthcoming)
26 Broadway, 19th Fl.
New York, New York 10004
Telephone: (212) 344-5400
Fax: (212) 344-7677
bsimon@schlamstone.com
tkissane@schlamstone.com

*Attorneys for Plaintiff CoreCivic, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 15, 2025, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Kyle Tanner*
Attorney