UNITED STATES DISTRICT COURT
FOR THE DISTRICT KANSAS

| | |
|---|---|
| **CORECIVIC, INC.**<br><br>　　**Plaintiff,**<br><br>　　v.<br><br>**CITY OF LEAVENWORTH, KANSAS, MAYOR HOLLY PITTMAN, MAYOR PRO TEM NANCY BAUDER, COMMISSIONERS GRIFF MARTIN, JERMAINE WILSON AND EDD HINGULA, IN THEIR OFFICIAL CAPACITIES AS MEMBERS OF THE LEAVENWORTH CITY COMMISSION,**<br><br>　　**Defendants.** | **Case No. 2:25-cv-2457** |

**STATEMENT OF INTEREST BY THE UNITED STATES**

　　The United States submits this Statement of Interest to address an aggressive and unlawful effort by the City of Leavenworth, Kansas (the "City of Leavenworth") to interfere with federal immigration enforcement. *See* 28 U.S.C. § 517 (authorizing the Attorney General to attend to the interests of the United States as a non-party in a suit pending in any court of the United States). The United States has a strong interest in countering state and local efforts to harass federal contractors, in the proper application of the Constitution and its Supremacy Clause, and in the foundational principles that protect the Federal Government from unconstitutional state and local interference.

　　The City of Leavenworth, the Mayor, and the City Commission have taken impermissible actions to interfere with the CoreCivic's operation of a detention facility located at 100 Highway

Terrace in Leavenworth, Kansas ("100 Highway Terrace"). The City of Leavenworth, acting through the City Commission, is unlawfully requiring Plaintiff to obtain a Special Use Permit (a "SUP") from the City of Leavenworth before it may carry out its contractual obligations to the Federal Government. In particular, on March 25, 2025, the City of Leavenworth adopted Resolution No. B-2394 entitled "A Resolution of the City Commission of the City of Leavenworth, Kansas, Regarding Certain Jail and Prison Uses on Property Located at 100 Highway Terrace, Leavenworth, Kansas." ("Resolution No. B-2394"). Resolution No. B-2394 prevents CoreCivic from using 100 Highway Terrace as a federal detention center under the guise that an SUP is now required, even though (i) the City of Leavenworth acknowledged for more than a decade that CoreCivic was exempt from an SUP based on its historic and existing use of 100 Highway Terrace, and (ii) throughout the entirety of that time, the City of Leavenworth allowed its operation as a detention center without an SUP. The City of Leavenworth's actions constitute unconstitutional interference with the operations of the Federal Government and thus should be enjoined.

## BACKGROUND

**A.    CoreCivic's use of 100 Highway Terrace.**[1]

CoreCivic is a private corporation that operates prisons and jails across the United States. Since 1992, CoreCivic has owned and operated a detention facility located at 100 Highway Terrace which has been consistently used as a jail or prison.

In 2012, the City of Leavenworth enacted Ordinance No. 7911, which amended its Development Regulations, prohibiting the operation of a jail or prison without an SUP issued by the City of Leavenworth. The Development Regulations also set rules for the continuation and rescission of an SUP. The Development Regulations grandfathered in CoreCivic so that it was not bound by the SUP requirement for 100 Highway Terrace, because the property had been used as a jail/prison prior to the enactment of the Development Regulations. The City of Leavenworth has

---

[1] For its background, the United States relies on the Factual Background as alleged in the Complaint. *See* ECF No. 1.

never required CoreCivic to have an SUP. Similarly, the City of Leavenworth has never paid nor been required to pay the annual fee associated with an SUP.

On January 26, 2021, President Biden issued Executive Order 14006, titled "Reforming Our Incarceration System to Eliminate the Use of Privately Operated Criminal Detention Facilities," directing that the Department of Justice not renew contracts with privately operated criminal detention facilities. In late 2021, CoreCivic's contract ended, and CoreCivic ceased housing detainees at 100 Highway Terrace. CoreCivic continued to maintain and staff 100 Highway Terrace to ensure it could remain in use as a detention center.

**B.  ICE's Agreement with CoreCivic to House Detainees at 100 Highway Terrace.**

On January 20, 2025, President Trump signed Executive Order 14159, titled "Protecting the American People Against Invasion," reversing Executive Order 14006 and allowing the Federal Government again to contract with private companies for the operation of detention facilities. In early March 2025, CoreCivic entered into an agreement with ICE to house federal immigration detainees at 100 Highway Terrace.

**C.  ICE's Mandate to Manage Immigration Detention.**

ICE manages and oversees the Nation's civil immigration detention system. Congress has authorized or required the detention of aliens under several different statutes and conditions. *See, e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), 1226(a), 1226(c), 1231(a). Additionally, Congress has directed that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1) and has instructed that ICE "shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility for [detention]" "[prior] to initiating any project for the construction of any new detention facility," *id.* § 1231(g)(2). Thus, Section 1231(g)(2) authorizes ICE to use private contractors to arrange for detention.

**D.     The City of Leavenworth Adopted Resolution No. B-2394 to Thwart ICE's Use of 100 Highway Terrace**

In response to CoreCivic's announcement that it had agreed with ICE to house detainees at 100 Highway Terrace, the City of Leavenworth adopted Resolution No. B-2394. In Resolution No. B-2394, the City Commission proclaimed that CoreCivic had "discontinued and abandoned" the use of 100 Highway Terrace as a jail or prison. The City Commission based this proclamation on what it deemed CoreCivic's purported discontinuance or abandonment of the use of 100 Highway Terrace as a jail or prison.

**E.     City of Leavenworth Initiates Litigation**

On March 31, 2025, the City of Leavenworth filed a lawsuit in the District of Kansas seeking declaratory and injunctive relief to prevent CoreCivic from operating 100 Highway Terrace without an SUP. *City of Leavenworth, Kansas v. CoreCivic, Inc.*, No. 25-cv-02169-TC-BGS. On May 22, 2025, the District of Kansas dismissed the City of Leavenworth's complaint for lack of subject-matter jurisdiction, because the City of Leavenworth had failed to allege the requisite damages amount to establish diversity jurisdiction.

The next day, on May 23, 2025, the City Leavenworth filed a petition in the District Court of Leavenworth County, Kansas. *City of Leavenworth, Kansas v. CoreCivic, Inc., et al.*, Case No. LV-2025-CV-000180. On June 2, 2025, the City of Leavenworth filed an amended petition asking the state court to determine that the City Commission correctly found that CoreCivic had "abandoned" 100 Highway Terrace in early 2022, and that the City Commission applied municipal law correctly by requiring CoreCivic to obtain an SUP before operating 100 Highway Terrace as a jail or prison.

On August 8, 2025, CoreCivic filed this action, under 42 U.S.C. § 1983, to enjoin and remedy ongoing violations of the Supremacy Clause of the United States Constitution and other federal rights. *See* ECF No. 1. On September 15, 2025, CoreCivic filed a motion for preliminary injunction and declaratory relief. *See* ECF Nos. 12, 13. On September 17, 2025, the Court set a hearing for September 24, 2025. *See* ECF No. 17.

## DISCUSSION

**Defendants violate intergovernmental immunity by impermissibly regulating the Federal Government's operations.**

Defendants have violated the Supremacy Clause by attempting to stymie the Federal Government's immigration-related operations at 100 Highway Terrace. Under the doctrine of intergovernmental immunity, the Constitution "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United States v. Washington*, 142 S. Ct. 1976, 1984 (2022); *Mayo v. United States*, 319 U.S. 441, 445 (1943); ("[A]ctivities of the Federal Government are free from regulation by any state."); *Treasurer of New Jersey v. U.S. Dep't of Treasury*, 684 F.3d 382, 410 (3d Cir. 2012) ("[S]tates may not directly regulate the federal government's operations or property."). This foundational principle means that Defendants cannot regulate the United States' contracts for private detention facilities.

This principle is especially true with regard to the Federal Government's exclusive authority to enforce the nation's laws regarding immigration. Indeed, the Supreme Court has clarified that the United States holds "broad, undoubted power over the subject of immigration," *Arizona v. United States*, 567 U.S. 387, 394 (2012), which may supersede a state's powers if "that was the clear and manifest purpose of Congress." *id*. at 400 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). The Constitution and federal law do not permit states to usurp the Federal Government's control over immigration policy by setting policies more to their own liking.

Across two centuries, the Supreme Court has repeatedly affirmed that "the Constitution guarantees 'the entire independence of the General Government from any control by the respective States,'" so States can neither "control the operations of the constitutional laws enacted by Congress," nor impede the Executive Branch's "execution of those laws." *Trump v. Vance*, 140 S. Ct. 2412, 2425 (2020) (quoting *Farmers & Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516, 521 (1914); *Arizona v. California*, 283 U.S. 423, 451 (1931) ("The United States may perform its functions without conforming to the police regulations of a state."). As Chief Justice

Marshall put it, "[t]he sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission," but it does not "extend to those means which are employed by congress to carry into execution powers conferred on that body by the people of the United States." *McCulloch v. Maryland*, 17 U.S. 316, 429 (1819). For that reason, the Supreme Court has, from the beginning, distinguished between *property* of the Federal Government's contractors—which States may regulate on equal terms as other property—and *operations* of the Federal Government and its contractors—which States cannot regulate at all. *See id*. at 400-01 (invalidating a state tax on the as "hostile legislation"); *see also North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality) ("A state regulation is invalid . . . if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals."); *United States v. Washington*, 596 U.S. 832, 838-39 (2022) ("a state law discriminates against the Federal Government or its contractors if it "single[s them] out" for less favorable "treatment," (quoting *North Dakota*, 495 U.S. at 435)).

This well-settled principle has been consistently applied to invalidate state and local laws that impose requirements on federal contractors. In *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 189–90 (1956) (per curiam), for example, a State sought to prevent the Federal Government from entering into agreements with its chosen contractors until the States' own licensing standards were satisfied. The Supreme Court struck down the law because it "would give the State's licensing board a virtual power of review over the federal [contracting] determination," violating the "immunity of the instruments of the United States from state control in the performance of their duties." *Id.* at 190 (quoting *Johnson v. Maryland*, 254 U.S. 51, 57 (1920)). Similarly, the Court invalidated a state law requiring common carriers to seek approval from a state agency for rates negotiated with the Federal Government to transport federal property. *Pub. Utilities Comm'n of Cal. v. United States*, 355 U.S. 534, 544 (1958). Such a law, the Court held, improperly allowed the state to approve or disapprove the decisions of federal officials exercising the discretion entrusted to them by federal law. *Id.* Other federal courts have also routinely struck down state laws seeking to regulate federal contractors in the performance of their duties.

Two federal circuit courts have recently held that intergovernmental immunity applies when states and localities aim to prevent the Federal Government from operating immigration detention facilities. First, in *CoreCivic, Inc. v. Governor of New Jersey,* No. 23-2598, 2025 WL 2046488 (3d Cir. July 22, 2025), the Third Circuit enjoined enforcement of a New Jersey law that forbade private facilities from contracting to house civil immigrant detainees. The district court had enjoined enforcement against CoreCivic on both intergovernmental immunity/direct regulation and preemption grounds in *CoreCivic, Inc. v. Murphy,* 690 F. Supp. 3d 467 (D.N.J. 2023), and the Third Circuit affirmed on grounds of intergovernmental immunity, finding the law to "impermissibly restrict [the Federal Government's] ability to hire whom it chooses." 2025 WL 2046488, at *6.

Second, in *Geo Group, Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022), the Ninth Circuit cited intergovernmental immunity when enjoining enforcement of a California State statute that forbade use of private immigration detention facilities, citing the Supremacy Clause's protection "against state laws that would 'in any manner control . . . the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government.'"

Both *Governor of New Jersey* and *Geo Group* relied on extensive Supreme Court authority confirming that state or local action that substantially interferes with federal operations constitutes direct regulation, which the doctrine of intergovernmental immunity expressly forbids. These authorities confirm that the City of Leavenworth's prevention of the Federal Government from housing civil immigration detainees at 100 Highway Terrace impermissibly regulates the Federal Government's immigration operations. Further, the City of Leavenworth targets solely CoreCivic and the detention center at 100 Highway Terrace—naming or considering no other entity or property—and its operations there. Therefore, Defendants' actions impermissibly restrict the Federal Government's legitimate immigration interests in operating a detention center at 100 Highway Terrace.

## CONCLUSION

For the reasons explained above, Resolution No. B-2394 violates the Supremacy Clause, and the Court should enjoin its enforcement.

Dated: September 23, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

ANTHONY P. NICASTRO
Acting Director
Office of Immigration Litigation

 /s/ John J. W. Inkeles
JOHN J. W. INKELES
Chief, Affirmative Litigation Unit
United States Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation & Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4309
Email: john.inkeles@usdoj.gov

Attorneys for the United States