# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CORECIVIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF LEAVENWORTH, KANSAS, | ) | |
| MAYOR HOLLY PITTMAN, MAYOR PRO | ) | Case No. 2:25-cv-2457 |
| TEM NANCY BAUDER, COMMISSIONERS | ) | |
| GRIFF MARTIN, JERMAINE WILSON AND | ) | |
| EDD HINGULA, IN THEIR OFFICIAL | ) | |
| CAPACITIES AS MEMBERS OF THE | ) | |
| LEAVENWORTH CITY COMMISSION. | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF BART VERHULST IN SUPPORT OF**
**APPLICATION FOR PRELIMINARY INJUNCTION AND**
**DECLARATORY RELIEF**

i

Bart Verhulst declares as follows pursuant to 28 U.S.C. §1746:

1.      I am employed by Plaintiff CoreCivic, Inc. ("CoreCivic") as Vice President/Federal & Local Partnership Relations.

2.      Based on eighteen (18) years of negotiating hundreds of contracts and modifications with the Federal Government and the U.S. Immigration and Customs Enforcement ("ICE"), I am intimately familiar with CoreCivic's process for procuring and maintaining government contracts, including with ICE.

3.      I am also familiar with the history of CoreCivic's detention center located at 100 Highway Terrace in Leavenworth, Kansas (the "Property" or the "Midwest Facility"), including CoreCivic's agreements and negotiations with the Federal Government and ICE concerning its use.

4.      I submit this declaration based on my personal knowledge, in support of CoreCivic's application for a declaratory judgment that Resolution No. B-2394, adopted by the Leavenworth City Commission on March 25, 2025 violates the Supremacy Clause of the U.S. Constitution, and for a preliminary injunction staying enforcement of the State Temporary Injunction (discussed and defined in the accompanying  declaration of CoreCivic's counsel, Bradley D. Simon, the "Simon Dec.") so as to permit CoreCivic to operate the Midwest Facility as a civil immigrant detention center at the Property under the ICE Agreement, and/or to negotiate toward, enter into, and perform under a subsequent agreement with ICE

for that purpose.

5.      CoreCivic requires the relief requested by this application in order to enable it to support ICE in discharging ICE's Constitutional mission to house civil immigration detainees and to avoid irreparable damage to both ICE and CoreCivic.

6.      CoreCivic is one of the country's largest private prison operators.  It operates thirty-seven (37) prisons in sixteen (16) states under contracts with local municipalities, states and the Federal Government.  As relevant here, CoreCivic operates nineteen (19) immigration detention centers in eleven (11) states under contract with federal and local governmental agencies.  The immigration detention centers house approximately twelve thousand five hundred (12,500) immigration detainees.

7.      Since 1992, CoreCivic has owned and operated a detention facility located at the Property.  From its inception, the Property has been used as a jail or prison, as those terms are defined under the City of Leavenworth's Development Regulations (the "Dev. Regs.").  From 1992 forward, CoreCivic operated the detention facility at the Property under a contract with the United States Department of Justice's U.S. Marshals Service.

8.      On January 26, 2021, President Biden issued Executive Order 14006, titled "Reforming Our Incarceration System to Eliminate the Use of Privately Operated Criminal Detention Facilities," directing that the Department of Justice

not renew contracts with privately operated criminal detention facilities.

9.      In late 2021, CoreCivic's contract with the U.S. Marshals Service ended and CoreCivic ceased housing detainees at the Property shortly thereafter. Nonetheless, CoreCivic continued to maintain the Midwest Facility so as to ensure it could remain in use as a detention center (a "jail or prison", in the language of the Dev. Regs.)  Among other things, CoreCivic maintained staff at, employed individuals at, marketed, responded to requests for proposals for, and engaged in contract negotiations for detention services at the Midwest Facility with potential partners, including with ICE.

10.     On January 20, 2025, President Trump signed Executive Order 14159, titled "Protecting the American People Against Invasion," reversing Executive Order 14006 and allowing the Federal Government to contract with private companies for the operation of detention facilities.

11.     In early March 2025, CoreCivic entered into an agreement with ICE (the "ICE Agreement") confirming a relationship whereby CoreCivic would provide urgent and essential detention services to ICE at the Midwest Facility for individuals in federal immigration custody, and would house more than 1,000 detainees pending the outcome of immigration proceedings.

12.     The ICE Agreement called for services from March 7, 2025 to September 6, 2025.  The purpose of letter contracts under the Federal Acquisition

Regulations is to enable a contractor or supplier to immediately begin performance while a definitized agreement is being negotiated.

13.    The Midwest Facility is essential to ICE's operations, as detailed in the accompanying declaration of Juan Acosta, a Facility Support Contractor retained by CoreCivic who previously served with ICE for eighteen (18) years before retiring as the Assistant Director of Field Operations for Enforcement and Removal sector.

14.    Based on my involvement in discussions with ICE and consultation with CoreCivic personnel so involved, I understand that, but for the State Temporary Injunction, ICE would have already entered into the contemplated subsequent agreement for the Midwest Facility.  Specifically, I understand that ICE is prepared to proceed with an initial subsequent contract expected to run either two or five years, in either case subject to anticipated renewal, with a value to CoreCivic of approximately $4 million per month or almost $50 million per year.

15.    CoreCivic has invested over $11 million for, among other things, staffing, equipping and renovating in order to house civil immigration detainees at the Midwest Facility.  In addition to the amounts already incurred, CoreCivic has also committed to spend $4 million in incremental capital costs to renovate the physical plant and has a monthly run rate of approximately $2 million in monthly operating costs to maintain the Property in a ready state in order to be prepared to

5

house civil immigration detainees at the Midwest Facility.

16. These investments will be lost, and CoreCivic's operations and the Property will likely need to be shut down entirely, unless the State Temporary Injunction is stayed pending the outcome of CoreCivic's claims.

17. As detailed at ¶¶ 24-27 of the accompanying Simon Dec., Defendants would not be able to answer in money damages for obstruction of CoreCivic's operations at the Midwest Facility in the event the State Temporary Injunction is found to have been wrongfully granted.

18. Moreover, CoreCivic's relationship with ICE depends on delivering timely service in the highly-competitive field of private immigrant detention at various locations nationwide. Each ICE field office places ICE detainees at numerous facilities under that field office's supervision. These facilities must be geographically diverse to reduce the distance detainees must be transported from point of arrest or apprehension. CoreCivic's current inability to admit detainees to Midwest Facility creates difficulties for the ICE field office that supervises Midwest in that detainees must be transported more frequently and over longer distances to be placed in suitable housing. These difficulties can strain the relationship between ICE and CoreCivic and contribute to a reluctance by ICE to use CoreCivic facilities in other locations.

19. The ongoing obstruction of CoreCivic's ability to operate the Midwest

Facility to house civil immigration detainees thus severely disrupts both ICE's ability to discharge its statutory duties, and CoreCivic's relationship with ICE at this and other locations.

20.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on 9/11, 2025.

Bart Verhulst