# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CORECIVIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF LEAVENWORTH, KANSAS, | ) | |
| MAYOR HOLLY PITTMAN, MAYOR PRO | ) | Case No. 2:25-cv-2457 |
| TEM NANCY BAUDER, COMMISSIONERS | ) | |
| GRIFF MARTIN, JERMAINE WILSON AND | ) | |
| EDD HINGULA, IN THEIR OFFICIAL | ) | |
| CAPACITIES AS MEMBERS OF THE | ) | |
| LEAVENWORTH CITY COMMISSION. | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF JUAN ACOSTA IN SUPPORT OF
APPLICATION FOR PRELIMINARY INJUNCTION  AND
DECLARATORY RELIEF**

i

Juan Acosta declares as follows pursuant to 28 U.S.C. §1746:

1.    I am retained by Plaintiff CoreCivic, Inc. ("CoreCivic") as an independent contractor supporting its Federal Partnership portfolio – specifically, the U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal ("ERO") sector.  ERO, as a directorate of ICE, manages all aspects of the immigration enforcement process, including identification and arrest, domestic transportation, detention, bond management, supervised release (including alternatives to detention) and the removal of aliens without legal authorization to remain in the United States.

2.    Prior to consulting CoreCivic, I worked for eighteen (18) years with ICE and seven (7) years with U.S. Customs and Border Protection and the legacy Immigration and Naturalization Service.

3.    I am intimately familiar with ICE's needs and operations with respect to alien detention, both generally and in the Midwest Region.  At the time of my retirement from ICE, I served as the ICE-ERO Assistant Director of Field Operations, directing operations and coordination among all ERO Field Operations activities throughout the nation's 25 field offices and 208 sub-offices and facilities. I held principal oversight for the full scope of immigration enforcement activities through which ERO identifies, arrests, pursues for prosecution and removes aliens from the United States.

4.     I am also familiar with the history of CoreCivic's detention center located at 100 Highway Terrace in Leavenworth, Kansas (the "Property" or the "Midwest Facility"), including CoreCivic's agreements and negotiations with the Federal Government and ICE concerning its use.

5.     I submit this declaration based on my personal knowledge, in support of CoreCivic's application for declaratory judgment that Resolution No. B-2394, adopted by the Leavenworth City Commission on March 25, 2025 violates the Supremacy Clause of the U.S. Constitution, and for a preliminary injunction staying enforcement of the State Temporary Injunction (discussed and defined in the accompanying  declaration of CoreCivic's counsel, Bradley D. Simon) so as to permit CoreCivic to operate the Midwest Facility as a civil immigrant detention center at the Property under the ICE Agreement, and/or to negotiate toward, enter into, and perform under a subsequent agreement with ICE for that purpose.

6.     CoreCivic requires the relief requested by this application in order to enable it to support ICE in discharging ICE's Constitutional mission to enforce the immigration laws and house civil immigration detainees and to avoid irreparable damage to the operations of both ICE and CoreCivic.

7.     ICE does not build or operate its own detention facilities, but rather contracts out its detention responsibilities to private contractors or local, state, or other federal agencies.  All facilities housing ICE detainees, whether operated by a

3

state or local entity or private contractor, "are required to follow a strict set of detention standards" set by ICE.   See https://www.ice.gov/detain/detention-management ("Detention Facility Oversight"), last visited September 2, 2025.  ICE likewise employs a "multilevel oversight and compliance program" to "ensure compliance with each contract's terms and conditions and the applicable [ICE] detention standards." *Id.*

8.    As conceived and initially pursued under the administration of President Joseph Biden, the Midwest Facility is to be ICE's primary facility for the Midwest Region, servicing the states of Wisconsin, Illinois, Indiana, Kentucky, Missouri and Kansas and is essential to ICE's operations.

9.    Strategically positioned in the central United States, the Midwest Facility will serve as a full-service detention facility and as a vital hub for the short-term and transitional housing of detainees who are subject to removal proceedings or awaiting deportation.  Additionally, its proximity to major transportation corridors and ICE field offices allows for efficient detainee processing, efficient transfers to ease overcrowding, and access to immigration court appearances, asylum processes, and removal operations.

10.    The Midwest Facility is also essential to relieve pressure on other overcrowded detention centers, ensuring compliance with federal detention standards, upholding safe, humane and orderly facility operations and supporting

4

ICE's mandate to enforce the nation's immigration laws effectively. Interruptions to the availability or operation of the Midwest Facility significantly disrupt ICE's nationwide and regional national security, public safety and border enforcement capabilities and strain its overall detention network.

11.    Illinois is a sanctuary state and Chicago a sanctuary city, so the only facilities available to ICE for the detention of removable or inadmissible aliens from Illinois are subject to various restrictions, including but not limited to a prohibition against local law enforcement cooperating with federal immigration enforcement. Without the Midwest Facility, the closest locations for ICE to safely house immigration detainees throughout the asylum processes or removal proceedings are in Texas, Arizona or Northeast Ohio. Relocating detainees to those locations will increase their time in custody, generate delays in appearances before the immigration court, interfere with timely asylum processes, compound the distance from their families and from their legal counsel or other support that may otherwise be available to them.

12.    The Midwest Facility will have substantial behavioral and mental health support not available in other ICE locations. Without the Midwest Facility, these services will be unavailable not only to detainees from the Midwest Region, but also to detainees from other regions in need of such support, whom ICE would be able to send to the Midwest Facility where appropriate.

5

13.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2025.

*Juan Acosta*

Juan Acosta