## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CORECIVIC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF LEAVENWORTH, KANSAS, | ) | |
| MAYOR HOLLY PITTMAN, MAYOR PRO | ) | Case No. 2:25-cv-2457 |
| TEM NANCY BAUDER, COMMISSIONERS | ) | |
| GRIFF MARTIN, JERMAINE WILSON AND | ) | |
| EDD HINGULA, IN THEIR OFFICIAL | ) | |
| CAPACITIES AS MEMBERS OF THE | ) | |
| LEAVENWORTH CITY COMMISSION. | ) | |
| | ) | |
| Defendants. | ) | |


## PLAINTIFF CORECIVIC'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ........................................................................................................................ 2

    A.    CoreCivic Has Stated A Claim Under 42 USC § 1983 For Violation Of Its
            Constitutional Rights With Respect To Its Contract With ICE ............................. 2

    B.    CoreCivic Has Alleged That The Resolution Violates The Supremacy
            Clause.5

            1.      Intergovernmental immunity ...................................................... 5

            2.      Conflict/Obstacle Preemption ................................................... 7

    C.    Abstention Does Not Warrant Dismissal Or A Stay ............................................. 8

    D.    The Anti-Injunction Act Does Not Warrant Dismissal Of CoreCivic's
            Claims 11

CONCLUSION .................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Other Authorities**

*Am. Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) ........................................................................................................ 1

*Arizona v. United States*,
   567 U.S. 387 (2012) ........................................................................................................ 1

*Blue Circle Cement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Rogers*,
   27 F.3d 1499 (10th Cir. 1994)...................................................................................... 13

*CCMS Pub. Co. v. Dooley-Maloof, Inc.*,
   645 F.2d 33 (10th Cir. 1981).......................................................................................... 20

*Cheyenne and Arapaho Tribes v. First Bank & Trust Co.*,
   560 Fed. App'x 699 (10th Cir. 2014)............................................................................ 22

*Colo. River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ...................................................................................................... 15

*CoreCivic, Inc. v. Governor of New Jersey*,
   145 F.4th 315 (3d Cir. 2025)................................................................................... 2, 8, 9

*CoreCivic, Inc. v. Murphy*,
   690 F. Supp. 3d 467 (D.N.J. 2023) ............................................................................. 1, 8

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*,
   953 F.3d 660 (10th Cir. 2020)...................................................................................... 14

*Friedman v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*,
   781 F.2d 777 (10th Cir. 1985)...................................................................................... 18

*GEO Group, Inc. v. Newsom*,
   50 F.4th 745 (9th Cir. 2022)............................................................................ 10, 11, 12

*Guthrie v. Cline*,
   No. 4:25-CV-00062-TWP-KMB, 2025 WL 1795107 (S.D. Ind. June 30, 2025)...................... 21

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
   599 U.S. 166 (2023) ........................................................................................................ 4

*Hickey v. Duffy*,
   827 F.2d 234 (7th Cir. 1987).......................................................................................... 20

*Horace Mann Ins. Co. v. Johnson By & Through Johnson*,
   953 F.2d 575 (10th Cir. 1991)...................................................................................... 19

*Johnson v. Maryland*,
   254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126 (1920) ............................................................ 9

*Lehman v. City of Louisville*,
   967 F.2d 1474 (10th Cir. 1992).................................................................................... 18

*Leiter Minerals, Inc. v. United States*,
   352 U.S. 220 (1957) ...................................................................................................... 23

*Leslie Miller, Inc. v. Arkansas*,
   352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956) ...................................................... 9

*Means v. Goodland Reg'l Med. Ctr.*,
   No. 22-CV-01239-TC-GEB, 2023 WL 8018925 (D. Kan. Nov. 20, 2023).......................... 5, 6

*Mease v. City of Shawnee*,
  No. CIV.A. 02-2041-CM, 2003 WL 23498473 (D. Kan. Oct. 2, 2003) ................................... 4

*Mitchum v. Foster*,
  407 U.S. 225 (1972) .......................................................................................................... 20

*Mount Olivet Cemetery Ass'n v. Salt Lake City*,
  164 F.3d 480 (10th Cir. 1998) ..................................................................................... 13, 14

*N. L. R. B. v. Nash-Finch Co.*,
  404 U.S. 138 (1971) .......................................................................................................... 23

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989) .......................................................................................................... 18

*Pace v. Swerdlow*,
  519 F.3d 1067 (10th Cir. 2008) ................................................................................... 15, 16

*Phelps v. Hamilton*,
  122 F.3d 1309 (10th Cir. 1997) ........................................................................................ 23

*Pieloch v. Dechra Ltd.*,
  No. 24-CV-2346-TC-ADM, 2025 WL 2443405 (D. Kan. Mar. 24, 2025) ........................... 5

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) .......................................................................................................... 15

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) ............................................................................................................ 1

*Rienhardt v. Kelly*,
  164 F.3d 1296 (10th Cir. 1999) ........................................................................................ 17

*Skull Valley Band Of Goshute Indians v. Nielson*,
  376 F.3d. 1223 (10th Cir. 2004) ....................................................................................... 13

*Southwest Air Ambulance, Inc. v. City of Las Cruces*,
  268 F.3d 1162 (10th Cir. 2001) ................................................................................... 16, 17

*Spiehs v. Lewis*,
  No. 23-CV-04121-TC-GEB, 2024 WL 5107274 (D. Kan. Dec. 13, 2024) ............................ 6

*Tooele County v. U.S.*,
  820 F.3d 1183 (10th Cir. 2016) ........................................................................................ 22

*Tri Cnty. Tel. Ass'n, Inc. v. Campbell*,
  No. 20-8053, 2021 WL 4447909 (10th Cir. June 16, 2021) ............................................... 17

*Tucker v. Specialized Loan Servicing, LLC*,
  83 F. Supp. 3d 635 (D. Md. 2015) .................................................................................... 21

*Tyler v. Russel*,
  410 F.2d 490 (10th Cir. 1969) .......................................................................................... 22

*Ungaro-Benages v. Dresdner Bank AG*,
  379 F.3d 1227 (11th Cir. 2004) .......................................................................................... 1

*United States v. King Cnty., Washington.*,
  122 F.4th 740 (9th Cir. 2024) ..................................................................................... 10, 11

*United States v. Locke*,
  529 U.S. 89 (2000) ............................................................................................................ 12

*United States v. Virginia*,
  139 F.3d 984 (4th Cir. 1998) .............................................................................................. 9

*Wyles v. Sussman*,
  661 F. App'x 548 (10th Cir. 2016) .................................................................................... 17

**Regulations**

28 U.S.C. § 2283 ............................................................................................. 12, 14

42 U.S.C. § 1983 .......................................................................................... 2, 3, 4, 7, 9

Plaintiff CoreCivic, Inc. ("CoreCivic") submits this memorandum of law in opposition to Defendants' Motion to Dismiss CoreCivic's Complaint. The Federal Government sought to address its critical shortage of immigration detention facilities by entering into a contract between ICE and CoreCivic for the MidWest Facility providing ICE proximity to major transportation corridors and ICE field offices, which are essential to its operations and relieve overcrowding at other facilities. Doc. 1, ¶¶34-35. The Federal Government has filed a Statement of Interest ("SOI") explaining the importance of the Facility to its operations, and its views are entitled to deference, *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1231–32 (11th Cir. 2004), citing *Republic of Austria v. Altmann*, 541 U.S. 677, 702 (2004), especially as immigrant detention affects relations with foreign nations.[1] We expect the Federal Government to make a further submission and to appear for argument on this motion and on CoreCivic's application for preliminary relief, returnable November 25, 2025, to reiterate its important interests, but is presently prevented from action by the government shutdown.

Since approximately 1992, the Property has been used exclusively as a federal detention facility—the  same and only use that CoreCivic's application seeks to maintain.. The only "change" to the Property's operations identified by Defendants is that, during the Biden Administration, the Federal Government suspended CoreCivic's use of the Facility. Nevertheless, CoreCivic maintained the Property for use as a detention center, Doc. 1 ¶27, and the ICE Contract

---

[1] *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003)("There is, of course, no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy"); *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 492 n.18 (D.N.J. 2023)("By making decisions for the federal government regarding the manner in which foreign nationals may be detained, New Jersey attempts to make 'policy choices that bear on this Nation's international relations'", quoting *Arizona v. United States*, 567 U.S. 387, 396 (2012)), *aff'd sub nom. CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025).

manifests the desire of CoreCivic and the Trump Administration, like the Bush and Obama Administrations before it, to continue that use now for immigrant detention.

## ARGUMENT

The Complaint alleges that Defendants violated 42 U.S.C. § 1983 by interfering with CoreCivic's rights under its existing contract with ICE, and that this was accomplished through the Resolution's impermissible interference with the Federal Government's broad Constitutional authority over immigration. Defendants do not dispute the Federal Government's authority but rather make four arguments for dismissal.

First, they argue that § 1983 is not a vehicle for Supremacy Clause claims. As CoreCivic shows at Point A, this is misdirected because CoreCivic has pleaded a violation of its Constitutional contract rights. At Point B, CoreCivic shows that Defendants have failed to identify pleading deficiencies with respect to the Complaint's allegations that the Resolution violates the Supremacy Clause. Further, abstention is not warranted because the principles of comity underlying it would be offended rather than advanced where, as here, the state court has solicited, and deferred action pending, the views of the federal court, as shown at Point C. Defendants' argument that the Anti-Injunction Act ("AIA") requires dismissal fails for this same reason and, even more fundamentally, because § 1983 claims alleging Constitutional violations are not subject to the AIA, as addressed in Point D. Defendants' motion for dismissal or a stay should therefore be denied in its entirety.

### A.    CoreCivic Has Stated A Claim Under 42 USC § 1983 For Violation Of Its Constitutional Rights With Respect To Its Contract With ICE

Defendants argue that "[a]lthough the complaint refers to various 'rights secured by the Constitution and laws of the United States,' it ultimately identifies only one: 'the Supremacy Clause of Article VI of the Constitution,'" Doc. 42, p. 4 (quoting Complaint), and it should be

dismissed because there is no private right of action under the Supremacy Clause itself. This ignores the allegations of the Complaint, which not only "refer to" CoreCivic's constitutional rights but clearly allege that Defendants violated CoreCivic's Constitutional rights with respect to its contract with ICE. *See* Doc. 1, ¶5 ("Resolution No. B-2394 prohibits performance of the agreement that ICE entered into with CoreCivic"); ¶9 ("CoreCivic would perform the ICE Agreement but for Resolution No. B-2394"); ¶¶45, 46 (on first claim, alleging "enforcement of Resolution B-2394 to prohibit CoreCivic from operating a civil detention facility on the Property without first obtaining a SUP violates rights secured to CoreCivic by the Constitution and laws of the United States"); ¶¶50, 58, 63, 69 (on all four claims, alleging the "City's actions directly and proximately caused Plaintiff to suffer violations of constitutional rights, including but not limited to interference with Plaintiff's contractual or statutory obligations to the Federal Government, delay or denial of use of its Property.")

The Complaint's claims for violation of CoreCivic's Constitutional contract rights are enforceable under § 1983 because they arise under "specific, rights-creating language"[2] in both the Contracts Clause of Article I, § 10[3] and the Due Process Clause of the 14th Amendment. *See, e.g.*, *Mease v. City of Shawnee*, No. CIV.A. 02-2041-CM, 2003 WL 23498473, at *2 (D. Kan. Oct. 2, 2003) (granting summary judgment and converting preliminary injunction to permanent injunction were municipal ordinance "operates as an impairment on the plaintiffs' constitutional right to contract" and "plaintiffs specifically pled their contracts clause claim pursuant to 42 U.S.C. § 1983"); *Means v. Goodland Reg'l Med. Ctr.,* No. 22-CV-01239-TC-GEB, 2023 WL 8018925, at *4 (D. Kan. Nov. 20, 2023) (Crouse, D.J.) (denying motion to dismiss where § 1983 plaintiff

---

[2] *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023).

[3] "No State shall . . .pass . . . any Law impairing the Obligation of Contracts. . .."

"alleges that his termination in violation of his term contract violated his Constitutional right to
due process under the Fourteenth Amendment . . . [and defendant failed] to identify a pleading
deficiency")

Defendants' attempt to read CoreCivic's Constitutional rights with respect to its contract
with ICE out of the Complaint fails on any reading, and especially in light of the obligation to view
the Complaint "in the light most favorable to the claimant." *Pieloch v. Dechra Ltd.*, No. 24-CV-
2346-TC-ADM, 2025 WL 2443405, at *1 (D. Kan. Mar. 24, 2025) (Crouse, D.J.) (denying motion
to dismiss where "Plaintiffs' Complaint provides 'fair notice of what the ... claim is and the grounds
upon which it rests'" (internal citation omitted); *see also Spiehs v. Lewis*, No. 23-CV-04121-TC-
GEB, 2024 WL 5107274, at *8 (D. Kan. Dec. 13, 2024) (Crouse, D.J.) (internal citation omitted)
(denying motion to dismiss where § 1983 plaintiff's "allegation that his WebEx connection was
terminated by the Board president . . . while following policies adopted by the Board . . . is enough,
at this stage, to support the argument that 'execution of a government's policy or custom' caused
Spiehs's alleged injuries"); *Means, supra,* *4 ("Loveless claims Means did not specify what rights
he claims were denied. Loveless speculates it might be a right not to be deprived of property
without due process or it might be gender discrimination. . . . His argument lacks merit: The
complaint expressly asserts a due process claim by alleging that Means had a protected property
right to continued employment as guaranteed by the contract and that he was terminated in
violation of the contract.") Because the Complaint pleads claims under CoreCivic's Constitutional
right to contract, Defendants' authorities saying that the Supremacy Clause does not confer a
private right of action are irrelevant.[4]

---

[4] Further, even if there were a technical defect in CoreCivic's pleading of its Constitutional contract
rights—and there is not—it could be cured by amendment.

**B.     CoreCivic Has Alleged That The Resolution Violates The Supremacy Clause**

Defendants fail to meet their burden of showing that dismissal is warranted due to deficiencies in the Complaint's pleading as to the principle of intergovernmental immunity, Point B(1), or conflict preemption, Point B(2).

*1.     Intergovernmental immunity*

Defendants dismiss in passing the direct regulation prong of intergovernmental immunity by arguing that it does not apply because CoreCivic is a contractor. But Supreme Court and other federal authorities confirm that regulation of federal contractors may constitute direct regulation of the Federal Government when, as here, it places restrictions upon Federal contractors beyond those applied by the Federal Government. In *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025), the Third Circuit enjoined enforcement of a New Jersey law (AB 5207) that forbade private facilities from contracting to house civil immigrant detainees. The district court enjoined enforcement of AB-5207 against CoreCivic on both intergovernmental immunity/direct regulation and preemption grounds. *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467 (D.N.J. 2023). The Third Circuit affirmed on grounds of intergovernmental immunity:

> . . . the Supreme Court has invalidated state laws that bar federal contractors from working within the state unless they meet certain qualifications "in addition to those that the [Federal] Government has pronounced sufficient." *Johnson v. Maryland,* 254 U.S. 51, 57, 41 S.Ct. 16, 65 L.Ed. 126 (1920); see, e.g., *Leslie Miller, Inc. v. Arkansas,* 352 U.S. 187, 188–90, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956) (per curiam) (invalidating a state law that imposed extra licensing requirements on federal defense contractor on both immunity and preemption grounds); see also *United States v. Virginia*, 139 F.3d 984, 987 (4th Cir. 1998) (barring the application of state "licensing and registration requirements to private investigators working solely for the FBI"). Though such laws technically apply only to the federal contractor, the Court has treated them functionally as bans on the federal government because they restrict its ability to hire whom it chooses.

145 F.4th at 326.  See also, *id.* at 327-28 (analyzing Supreme Court authority to conclude that, though facially directed at private parties, AB-5207 directly regulates the federal government "twice over" by substantially interfering with its immigration operations.)

In *GEO Group, Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022) (en banc), the Ninth Circuit cited intergovernmental immunity when enjoining enforcement of a California State statute (AB 32) that forbade use of private immigration detention facilities:

> Simply put, AB 32 would breach the core promise of the Supremacy Clause. To comply with California law, ICE would have to cease its ongoing immigration detention operations in California and adopt an entirely new approach in the state. But the Supremacy Clause protects against state laws that would "in any manner control ... the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." . . . This foundational limit on state power cannot be squared with the dramatic changes that AB 32 would require ICE to make.

50 F.4th at 758. And it reached a similar result in *United States v. King Cnty., Washington*. 122 F.4th 740, 756–57 (9th Cir. 2024) (striking as violative of intergovernmental immunity Executive Order that prevented ICE contractors from continuing to operate flights out of a certain airfield). Relying on the "core logic" from *Geo Group*, the Ninth Circuit found "the Executive Order effectively grants King County the 'power to control' ICE's transportation and deportation operations, forcing ICE either to stop using Boeing Field or to use government-owned planes there." *Id*. at 756. It went on to find that "[b]ecause this impermissibly 'override[s] the federal government's decision, pursuant to discretion conferred by Congress, to use private contractors to run its' flights," it was barred by the doctrine of  the intergovernmental immunity. *Id*. (quoting *GEO Grp.* 50 F.4th at 750 -51)

Both *Geo Group* and *Governor of New Jersey* drew on and analyzed extensive Supreme Court authority confirming that state or local action that substantially interferes with federal operations constitutes direct regulation forbidden by the doctrine of intergovernmental immunity.

6

These authorities confirm that, because the Resolution seeks to prevent the Federal Government from housing civil immigration detainees at the Property under agreement with CoreCivic, the Resolution impermissibly regulates the Federal Government's immigration operations.

Defendants fare no better in arguing that the Regulation does not discriminate against CoreCivic as a federal contractor because the Ordinance dates back to 2012, or because Federal Regulations require contractors to comply with local safety and emergency codes. It is not the existence of the SUP requirement in the Ordinance that gives rise to CoreCivic's § 1983 claims, but the application of that requirement to CoreCivic through the Regulation— which is directed only at the Property (and thus only at CoreCivic), and issued only upon CoreCivic's announcement of its contract with ICE more than a decade after passage of the Ordinance.

### 2.    Conflict/Obstacle Preemption

As to preemption, the question is not whether the Immigration and Naturalization Act was intended by Congress to assume federal control over municipal land use regulation, but whether Congress intended to accord the Federal Government discretion to arrange the place and manner of immigrant detention. The "presumption against preemption" Defendants urge does not apply because of the Federal Government's "significant" (indeed, exclusive) presence in the field of immigrant detention. *See United States v. Locke*, 529 U.S. 89, 108 (2000); *Geo Grp.*, 50 F.4th 761-62 ("The Supreme Court has indicated that the presumption does not apply when a state law would interfere with inherently federal relationships"; there, specifically, immigration). With or without that presumption, Tenth Circuit authority supports the Complaint's pleading of preemption. *See, e.g.*, *Skull Valley Band Of Goshute Indians v. Nielson*, 376 F.3d. 1223, 1252 (10th Cir. 2004) (affirming preemption of county land use plans directed to "the health and general welfare of the citizens of the state" where they "address matters . . . that are the exclusive province of the federal

government"); *Blue Circle Cement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Rogers*, 27 F.3d 1499, 1508, 1510 (10th Cir. 1994) (reversing summary judgment, holding that fact issues existed concerning subjects relevant to preemption analysis including "whether this Ordinance is a reasonable response to protect a legitimate local concern or whether it is really a sham, with the purpose and effect simply of frustrating" federal policy).

*Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 487 (10th Cir. 1998) does not support dismissal. As a summary judgment case, it did not concern a pleading motion and premised the grant of summary judgment on factual findings that that plaintiff did "not perform a significant or indispensable governmental function," 164 F.3d at 487, and that the challenged zoning provision did not "undermine or frustrate any discernable congressional policy or objective." 164 F.3d at 489.

## C.    Abstention Does Not Warrant Dismissal Or A Stay

In *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660 (10th Cir. 2020)—which Defendants cite as recognizing that there are "*certain instances* in which the prospect of undue interference with state proceedings counsels against federal relief," 953 F.3d at 668 (emphasis added)–the Tenth Circuit affirmed a decision not to abstain, noting that "because of the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,' the Supreme Court has repeatedly cautioned that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" *Id.,* quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817 (1976). In *Quackenbush v. Allstate Ins. Co.,* the Supreme Court identified "regard for federal-state relations" as among the major concerns behind abstention, concluding: "Ultimately, what is at stake is a federal court's decision, based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and the competing concern for the

'independence of state action.'" 517 U.S. 706, 716, 717 (1996). The case at bar does not call for the extraordinary step of abstention because the Hon. John Bryant, presiding in the state court action, has invited this Court to resolve the issues under federal law impacting the pending litigation in state court, and has elected to defer to this Court respecting the federal issues raised in this action. *See* Doc. 37-2, Order dated August 12, 2025[5] (entered August 15):

> [T]he court has received notice from Defendant CoreCivic, Inc., that on or about August 8, 2025, Defendant CoreCivic, Inc., filed Case No. 2:25-cv-2457 in the United States District Court for the District of Kansas. . . . The argument raised in that Complaint is the same as arguments made in the cases pending before this court regarding the Supremacy Clause of Article VI of the United States Constitution. . . The court believes that due to the pending appellate review and ongoing federal case, the court has no choice but to stay certain decisions pending the outcomes of those matters. The legal issues in those matters overlap the issues pending before this court to such a degree as to make them unable to be parsed. In fact, **if Defendant is successful in the newly filed federal case, it would appear to make any decisions in this matter moot**.

*Id.* (emphasis added).

None of Defendants' cases regarding various abstention doctrines involved a circumstance where the state court had solicited the federal court's view on a Constitutional question, and the Tenth Circuit's decision in *Southwest Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162 (10th Cir. 2001) recognizes that, in this circumstance, abstention would offend—and accepting the state court's invitation would further—the concerns of comity between state and federal courts that underlie abstention. There, an ambulance service brought § 1983 claims challenging the legality and enforcement of a municipal ordinance setting fees at the Las Cruces International Airport. The city filed criminal charges in municipal court against the president of the ambulance service for violation of the ordinance, and the municipal court "stayed its own proceedings in favor

---

[5] The Court may take judicial notice of state court filings on this motion. *Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008).

of federal resolution of the issues." 268 F.3d at 1178. The Circuit reversed the district court's

decision to abstain:

> *Younger* abstention is, in essence, a doctrine founded on comity and in our view,
> abstaining from exercising federal jurisdiction and sending the case back to the
> municipal court (after that court had decided *sua sponte* to stay the proceeding),
> would function as something close to a writ of mandamus which would not be in
> harmony with the comity *Younger* was designed to foster.

There is no reason to depart from the virtually unflagging obligation of the federal courts

to exercise their jurisdiction. *See, e.g., Tri Cnty. Tel. Ass'n, Inc. v. Campbell*, No. 20-8053, 2021

WL 4447909, at *10 (10th Cir. June 16, 2021) (noting "parties may simultaneously litigate the

same claims in both state and federal court," noting *Wyles v. Sussman*, 661 F. App'x 548, 552 (10th

Cir. 2016) (unpublished) as "citing *Colorado River* for the proposition that 'a federal court with

jurisdiction isn't barred from hearing a suit concerning the same matter as a suit pending in state

court' and vacating and remanding because the district court 'erroneously concluded that

[plaintiff's] pending state-court action precluded his parallel federal-court action'"); *Rienhardt v.

Kelly*, 164 F.3d 1296, 1303–04 (10th Cir. 1999) (affirming district court's refusal to abstain because

the four *Colorado River* factors did not "strongly counsel" in favor of abstention and noting that

"piecemeal litigation" alone is not the "exceptional circumstance" necessary to justify abstention);

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 362 (1989) (*Burford*

"does not require abstention whenever . . . there is a 'potential for conflict' with state regulatory

law or policy" (quoting Colorado River) and 368 ("it has never been suggested that *Younger*

requires abstention in deference to a state judicial proceeding reviewing legislative or executive

action. Such a broad abstention requirement would make a mockery of the rule that only

exceptional circumstances justify a federal court's refusal to decide a case in deference to the

States.").[6] This is especially so as the question of whether CoreCivic requires an SUP to continue operating the Property as a jail or prison is limited and straightforward[7] and the doctrines Defendants raise permit a stay rather than dismissal even when applied, so this Court could retain jurisdiction (and resolve CoreCivic's preliminary application for declaratory relief) even if it should elect to await for the state court, with the insights it has solicited from this court, to resolve such state law issues as Judge Bryant deems appropriate.

Defendants' cases about the avoidance of *unnecessarily* reaching Constitutional questions do not apply to the facts at hand.  The Federal Government has expressed a need for CoreCivic to provide immigrant detention services, ICE and CoreCivic have contracted for those services, and Defendants' Resolution attempts to prevent them from proceeding under that contract.  CoreCivic (as well as the Federal Government) are suffering ongoing injury, and none of Defendants' authorities dismissed a case seeking to vindicate a federal contractor's Constitutional contract rights with the Federal Government in furtherance of an urgent need to enable it to discharge its Constitutional duties (a need the Federal Government expressed in the SOI and CoreCivic expects it will elaborate upon once the government shutdown ends).

### D.    The Anti-Injunction Act Does Not Warrant Dismissal Of CoreCivic's Claims

---

[6] *See also Friedman v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.,* 781 F.2d 777, 791 n.4 (10th Cir. 1985) (district court providently exercised discretion by declining *Pullman* abstention urged "to permit the New Mexico courts to determine whether the Bernalillo County Seal" featuring a cross violated the New Mexico Constitution).

[7] *Lehman v. City of Louisville*, 967 F.2d 1474, 1476-78 (10th Cir. 1992) (holding *Burford* and *Pullman* abstention would be "inappropriate" in § 1983 claim based on city's enforcement of a zoning ordinance because it did not "not involve issues concerning a complicated state regulatory scheme"); *Horace Mann Ins. Co. v. Johnson By & Through Johnson*, 953 F.2d 575, 579 (10th Cir. 1991) (holding "the district court abused its discretion" by applying *Burford* abstention because the case did not involve an "extremely complex" state regulatory scheme and "[t]he considerations of comity and federalism upon which the district court relied did not warrant closing the doors of a federal court").

In *CCMS Pub. Co. v. Dooley-Maloof, Inc.*, the Tenth Circuit held that "[a] federal court may enjoin state proceedings where necessary to protect or effectuate its judgments." 645 F.2d 33, 38 (10th Cir. 1981) (citing *CCMS Pub.* cited *Mitchum v. Foster*, 407 U.S. 225 (1972), recognizing that claims brought under § 1983 are "expressly authorized" by statute and thus excepted from the AIA by the express language of 28 U.S.C. § 2283). Defendants do not address *CCMS Pub.* and their effort to distinguish *Mitchum*, relying entirely on out-of-circuit cases, fails. Their reliance on the requirement of *Hickey v. Duffy*, 827 F.2d 234, 240 (7th Cir. 1987) that § 1983 claims must allege that the "the state-court litigation itself is unconstitutional" not only lacks support in the Tenth Circuit, *Hickey* itself limits that requirement to claims of *statutory* rather than Constitutional violations. 827 F.2d at 243 ("[O]bedience to *Mitchum* requires us to hold that § 1983 supplies that authorization for constitutional claims, *but it does not demand such a holding for statutory claims*. . . . We hold that § 1983 does not 'expressly authorize' injunctions, based on federal *statutes*, against litigation in state courts." (internal citation omitted, emphasis added).) This language necessarily means that Constitutional claims asserted via § 1983, like CoreCivic's, are not subject to the AIA. Indeed, if the bringing of a claim via § 1983 rendered it "statutory" even if based on a Constitutional violation, every § 1983 claim would be statutory, and the distinction *Hickey* takes care to draw would never arise.[8] Moreover, the Temporary Injunction entered by the state court giving immediate effect to the Resolution (which Defendants note) actively prevents CoreCivic from performing under its contract with ICE, so the state court litigation is giving effect to the Resolution and is thus equally unconstitutional.

---

[8] For this reason, *Guthrie v. Cline*, No. 4:25-CV-00062-TWP-KMB, 2025 WL 1795107 (S.D. Ind. June 30, 2025) cannot be read, as Defendants may intend, to suggest that a Constitutional claim brought via § 1983 should be regarded as statutory for purposes of the AIA under *Hickey*.

Defendants concede that they have "no District of Kansas or Tenth Circuit precedent" to support their argument that the relief CoreCivic seeks should be treated "as a *de facto* injunction to stay the proceedings in Kansas state court." Doc. 42, p. 6. But even their out-of-circuit authorities do not support dismissal. That is because even if, contrary to law, the AIA were applied, CoreCivic seeks not only an injunction but also a declaration that the Resolution is unconstitutional and unenforceable, Doc. 1, p. 16. Of Defendants' cases only *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 641 (D. Md. 2015) concerned an application for declaratory relief, and *Tucker*'s finding that the declaration there would have the same effect as an injunction does not apply here because, as demonstrated above at Point C, the declaratory relief CoreCivic seeks would provide assistance requested by Judge Bryant. *See* Doc. 37, CoreCivic's Memorandum in Support of Preliminary Injunction and Declaratory Relief, pp. 12-13 ("Grant of CoreCivic's application for declaratory relief confirming that the Resolution violates the Supremacy Clause, so that Judge Bryant may determine the effect of that declaration on the State Temporary Injunction (and the State Court Action more generally), would therefore be consonant with the [AIA]."); *see also Cheyenne and Arapaho Tribes v. First Bank & Trust Co.*, 560 Fed. App'x 699, 707 (10th Cir. 2014) (rejecting the tribe's argument that at least their declaratory claims were permissible under the AIA, the Circuit found that the AIA applied as a bar only because the state court judge "did not manifest a willingness to await a federal declaration regarding the state court's jurisdiction").

Nor do Defendants' remaining citations support dismissal. *Tyler v. Russel*, 410 F.2d 490, 491 (10th Cir. 1969), applied the AIA to prevent an injunction against a criminal proceeding, not a civil matter. *Tooele County v. U.S.*, 820 F.3d 1183, 1188 (10th Cir. 2016) was not a § 1983 case, and thus did not concern the *Mitchum* exceptions. *Phelps v. Hamilton,* 122 F.3d 1309, 1325 (10th Cir. 1997) concerned claims seeking to declare pending criminal proceedings arising from

homosexual conduct, and various picketing/stalking/harassment statues, unconstitutional. While the Circuit noted that "our review of the record and applicable case law reveals no basis for applying one of the statutory exceptions," it did so without addressing the *Mitchum* exceptions because "plaintiffs do not discuss the [AIA] or its exceptions" (it also found that plaintiffs had failed to demonstrate a likelihood of success). *Phelps* application of the AIA says nothing about whether it applies to CoreCivic's suit, supported by a federal SOI,[9] premised on violation of CoreCivic's Constitutional rights with respect to its contract with the Federal Government in the core Federal area of immigrant detention.

## **CONCLUSION**

For the reasons set forth above, Plaintiff CoreCivic respectfully requests that the Defendants' motion to dismiss be denied in its entirety.

Dated: October 31, 2025

---

[9] The AIA does not apply to Federal Government's interest. N. *L. R. B. v. Nash-Finch Co.*, 404 U.S. 138, 144-145 (1971) (emphasis supplied) (the anti-injunction act "is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. **The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283 would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 alone**'". Quoting *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 225-26 (1957).)

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Kyle Tanner*
Kyle Tanner, KS Bar #29866
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: 816-983-8000
Facsimile: 816-983-80280
Jake.Reinig@huschblackwell.com

**SCHLAM STONE & DOLAN LLP**

*/s/ Bradley D. Simon*
Bradley D. Simon admitted pro hac vice
Thomas A. Kissane admitted pro hac vice forthcoming
26 Broadway, 19th Fl.
New York, New York 10004
Telephone: (212) 344-5400
Fax: (212) 344-7677
bsimon@schlamstone.com
tkissane@schlamstone.com

*Attorneys for Plaintiff CoreCivic, Inc.*