# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CORECIVIC, INC., | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| CITY OF LEAVENWORTH, KANSAS, | ) |
| MAYOR HOLLY PITTMAN, MAYOR PRO | )   Case No. 2:25-cv-2457-TC-GEB |
| TEM NANCY BAUDER, COMMISSIONERS | ) |
| GRIFF MARTIN, JERMAINE WILSON AND | ) |
| EDD HINGULA, IN THEIR OFFICIAL | ) |
| CAPACITIES AS MEMBERS OF THE | ) |
| LEAVENWORTH CITY COMMISSION. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF CORECIVIC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION AND DECLARATORY RELIEF**

CoreCivic responds to Defendants' contentions that the requested relief should be denied: 1) because Defendants' are entitled to regulate CoreCivic's *property* (as opposed to its *operations,* which they concede they cannot regulate) (Point A); 2) under abstention principles (Point B); 3) because CoreCivic's § 1983 claims are not sufficiently definite and/or under the Anti-Injunction Act ("AIA") (Point C); and 4) because CoreCivic has not shown irreparable harm. (Point D).

A.  **The Regulation and the STI Regulate CoreCivic's Operations in Violation of the Doctrines of Intergovernmental Immunity and Conflict Preemption**

The Nation faces a critical shortage of immigration detention facilities.[1] The Federal Government sought to address this shortage by entering into a contract between ICE and CoreCivic for the Midwest Facility. Verhulst Dec. 37-3, ¶11; Federal Statement of Interest ("SOI"), Doc. 27. The Federal Government's views are entitled to deference, *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1231–32 (11th Cir. 2004), citing *Republic of Austria v. Altmann*, 541 U.S. 677, 702 (2004), especially as immigrant detention affects relations with foreign nations.[2] Since approximately 1992, the Property has been used exclusively as a federal detention facility—the same and only use that CoreCivic's application seeks to maintain. The only "change" to the Property's operations identified by Defendants is that, during the Biden Administration, the Federal Government halted its use of the Facility for criminal detention. Nevertheless, CoreCivic maintained the Property for use as a detention center, Doc. 1 ¶27, and the ICE Contract manifests

---

[1] Bart Verhulst Declaration ("Verhulst Dec."), Doc. 37-3, ¶¶9-14; *see also* https://forumtogether.org/article/legislative-bulletin-friday-june-27-2025/; https://www.reuters.com/world/us/us-immigration-detention-maxed-out-47600-detainees-ice-official-says-2025-03.

[2] *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003) ("There is, of course, no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy"); *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 492 n.18 (D.N.J. 2023) ("By making decisions for the federal government regarding the manner in which foreign nationals may be detained, New Jersey attempts to make 'policy choices that bear on this Nation's international relations'") (quoting *Arizona v. United States*, 567 U.S. 387, 396 (2012), *aff'd sub nom. CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025)).

the desire of CoreCivic and the Trump Administration, like the Bush and Obama Administrations before it, to continue that use now for immigrant detention.

Defendants' argument of 'regulating property rather than operations' fails to address CoreCivic's showing that the Resolution and the State Temporary Injunction ("STI"), which gives the Resolution immediate effect, directly concern CoreCivic's operations at the Facility. Doc. 37, citing Bradley D. Simon Declaration ("Simon Dec."), Doc. 37-1, ¶¶16-21 & Exhs. 3-6. Nor can Defendants deny that the STI entirely prevents CoreCivic's operation of the Facility. That is sufficient to show a violation of intergovernmental immunity's direct regulation prong. Defendants' passing claim that direct regulation does not apply because CoreCivic is a contractor is contrary to the law, as shown in CoreCivic's Moving Brief. Doc. 37 at 4–5. Their argument on the discrimination prong—that "The City's requirement of an SUP for a jail or prison dates back to 2012, long before this dispute ever arose"—fails because it is not the existence of the SUP requirement that gives rise to CoreCivic's claims, but the application of that requirement to CoreCivic following CoreCivic's announcement of its contract with ICE—more than ten years after the Ordinance was enacted.

On preemption the question is not whether Congress intended the INA to assume Federal control over municipal land use regulation, but whether it intended to accord the Federal Government discretion over immigrant detention. Defendants do not address CoreCivic's showing that it did. Doc. 37 at 2-3. Defendants fail to distinguish *Blue Circle Cement, Inc. v. Bd. of Co. Comm'rs of Rogers Co.*, 27 F.3d 1499 (10th Cir. 1994) because the portions of the amended state court petition to which they refer merely identify broad objectives and give no sense of what CoreCivic would have to do to meet them. The only physical characteristic of the Property that the amended petition identifies in this regard is its location, which has never changed. CoreCivic thus

2

faces the same standardless process that *Blue Circle Cement* found to support preemption.

B.     **Abstention Principles Do Not Bar the Requested Relief**

As for abstention, the key fact is that the state court has invited this Court to resolve the issues under Federal law impacting the pending litigation in state court. Defendants cannot dispute that the Hon. John Bryant has forecasted his intention to defer to this Court respecting the issues raised in this action. Doc. 37 at 12 (quoting Judge Bryan: "if Defendant is successful in the newly filed federal case, it would appear to make any decisions in this matter moot".)

None of Defendants' abstention cases[3] involved a circumstance where the state court solicited the federal court's view on a Constitutional question, and Defendants do not even address *Southwest Air Ambulance, Inc. v. City of Las Cruces,* 268 F.3d 1162 (10th Cir. 2001) (Doc. 37 at 12), which held that, in such a case, abstention would offend—and accepting the state court's invitation would further—comity between state and federal courts. This eliminates the argument for abstention, which in any event was weak because the question of whether CoreCivic requires an SUP to continue operating the Property as a jail or prison is limited and straightforward,[4] and nothing in the requested relief would prevent the state court from reaching it. *See Kansas Jud. Rev.*

---

[3] *See e.g.*, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989) (*Burford* "does not require abstention whenever . . . there is a 'potential for conflict' with state regulatory law or policy" (quoting *Colorado River*); *D.A. Osguthorpe Fam. P'ship v. ASC Utah, Inc.,* 705 F.3d 1223, 1235 (10th Cir. 2013)(abstaining in action commenced "several years after [state] litigation had begun").

[4] *See, e.g.*, *Horace Mann Ins. Co. v. Johnson By & Through Johnson*, 953 F.2d 575, 579 (10th Cir. 1991) (reversing abstention, distinguishing *Burford* as involving an "extremely complex" state regulatory scheme); *Lehman v. City of Louisville*, 967 F.2d 1474, 1476-78 (10th Cir. 1992) (abstention "inappropriate" where § 1983 zoning claim did "not involve issues concerning a complicated state regulatory scheme"); *Rienhardt v. Kelly*, 164 F.3d 1296, 1303–04 (10th Cir. 1999) ("piecemeal litigation" not the "exceptional circumstance" necessary for *Colorado River* abstention); *Friedman v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 781 F.2d 777, 791 n.4 (10th Cir. 1985) (*Pullman* abstention providently declined on Constitutional issue).

3

*v. Stout*, 519 F.3d 1107, 1118–19 (10th Cir. 2008).[5] The doctrines Defendants raise permit a stay even when applied, so this Court could grant the preliminary relief based on the U.S. Constitution while awaiting state court resolution of the state law issues. Neither of Defendants' cases about the avoidance of Constitutional questions (Doc. 39 at 11-12) denied preliminary relief immediately necessary to vindicate a Federal contractor's right to contract with the Federal Government in furtherance of its Constitutional duties.

C.      **CoreCivic's § 1983 Claims Are Sufficiently Definite; The AIA Permits Relief**

CoreCivic has a right under Art. 1 §10 of the U.S. Constitution against impairment of its contract with ICE. Defendants' cases saying the Supremacy Clause is not a source of substantive legal rights[6] are therefore inapposite.[7] A right to contract is bilateral—no one can contract with himself. Here, the two parties protected by the Supremacy Clause from interference with their contract are ICE (seeking immigrant detention services) and CoreCivic (seeking to provide them). Their exercise of that right is enforceable through § 1983 because it arises from specific, rights-creating language in Art. 1 § 10. *Compare Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599

---

[5] The court entered preliminary injunction against enforcement of state law while certifying other questions, noting "[t]o force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect" (citation omitted), *certified question answered*, 287 Kan. 450, 196 P.3d 1162 (2008), *opinion after certified question answered*, 562 F.3d 1240 (10th Cir. 2009).

[6] Notably, *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 111-12 (1989) held rights under the National Labor Relations to be enforceable through §1983 even though not "clearly set forth in the text of the statute."

[7] This is confirmed by the Tenth Circuit's recent reiteration that the right to enjoin unconstitutional conduct arises from equitable powers—rather than an implied right of action—under the Supremacy Clause. *Green Room LLC v. Wyoming,* No. 24-8053, 2025 WL 2999673, at *5, n.4 (10th Cir. Oct. 27, 2025), citing *Armstrong v. Exceptional Child Center, Inc.,* 575 U.S. 320, 327 (2015); *see also Iowa Migrant Movement for Just. v. Bird*, No. 24-2263, 2025 WL 2984379, at *6 (8th Cir. Oct. 23, 2025) ("The Supreme Court has 'long recognized' that 'if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted.'" (quoting *Armstrong*).)

4

U.S. 166, 183 (2023). If Defendants intend to argue that equitable relief cannot issue under the Supremacy Clause, they are wrong. *Green Room LLC, supra,* confirms, it can—even where, unlike here, it "does not depend upon the existence of some federal statutory or constitutional right." 2025 WL 2999673, at *5, n.4.  Nor does it make any difference that plaintiffs in *New Jersey* and *Geo Grp.* did not seek relief under §1983. All that matters is that CoreCivic has a federally protected right in its contract to provide immigration detention services to ICE that is both "specific" and "definite." It could hardly be more so. The cases cited by Defendants (Doc. 39 at 5) do not support Defendants' argument that the requested relief is forbidden by the AIA. In preventing CoreCivic from performing under its contract with ICE, the STI (and thus the state court litigation) is causing CoreCivic's injury, and the rights of the Federal Government under the U.S. Constitution and of CoreCivic under § 1983 can be given their intended scope only if that is stopped.

D.  **CoreCivic Has Shown Irreparable Harm**

CoreCivic is entitled to rely on its Constitutional injury because the STI not only "actually affected" that injury, *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 756 (10th Cir. 2024), but is its immediate cause. Defendants do not rebut CoreCivic's showing of their inability to pay. Simon Dec., Doc. 37-1 ¶¶29-30. Their reference to a $5,295,616 reserve ignores CoreCivic's $2 million monthly cost to keep the facility ready for ICE, Verhulst Dec., Doc 37-3 ¶15, which would exhaust the reserve in less than three months even without considering lost profits.[8] The SOI confirms the Federal Government's urgent need for CoreCivic's performance, and merely contracting to perform, without performance, does not remedy the disruption to CoreCivic's relationship with the Federal Government. Verhulst Dec. Doc. 37-3 ¶¶18-19.

---

[8] Defendants' misguided projection of CoreCivic's lost profits is not specific to the Facility, which CoreCivic has kept ready for ICE's use. *id.* At a minimum, CoreCivic is entitled to recover its $4 million in monthly revenue, less any costs avoided as a result of being denied the right to perform.

5

Dated: November 7, 2025

        Respectfully submitted,

        **HUSCH BLACKWELL LLP**

        */s/ Kyle Tanner*
        Kyle Tanner, KS Bar #29866
        Jacob N. Reinig, MO Bar #72247
        4801 Main Street, Suite 1000
        Kansas City, MO 64112
        Telephone: 816-983-8000
        Facsimile: 816-983-80280
        Kyle.Tanner@huschblackwell.com
        Jake.Reinig@huschblackwell.com

        **SCHLAM STONE & DOLAN LLP**

        /s/ *Bradley D. Simon*
        Bradley D. Simon
        Thomas A. Kissane
        26 Broadway, 19th Fl.
        New York, New York 10004
        Telephone: (212) 344-5400
        Fax: (212) 344-7677
        bsimon@schlamstone.com
        tkissane@schlamstone.com

        *Attorneys for Plaintiff CoreCivic, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 7, 2025, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

        */s/ Kyle Tanner*
        Attorney